STATE EX REL. BREGER ET AL. *v.* RUSCHE ET AL.

[No. 27,580.   Filed February 9, 1942.   Rehearing denied
March 5, 1942.]

*Arthur C. Stone* and *F. Wendell Lensing,* both of
Evansville, for appellants.

*Charles M. LaFollette, Herman L. McCray,* and *F. Bayard Culley, Jr.,* all of Evansville, for appellees.

FANSLER, J.—This is an action in *quo warranto,* seeking a determination as to who are the legal directors of a domestic corporation.

The only error assigned is based upon the sustaining of a demurrer to the complaint.

The complaint alleges that Michael A. Breger and Eugenia Breger, Louisa Kuehn, and William Breger are each the owner of certain shares of the common capital stock of the Specialty Warehouse Corporation, and that together they own a majority of the capital stock; that they entered into a contract appointing Arthur C. Stone their irrevocable proxy and attorney to vote all of their stock in said corporation; that at the annual stockholders' meeting Stone presented himself and offered to vote said stock as proxy; that William Breger was present in person and was permitted by the chairman of the stockholders' meeting to vote his stock in person, notwithstanding the proxy held by Stone, and that his stock was counted as voted by him in person; that William Breger had no right to vote the stock; that by reason of his having voted it certain persons were elected directors; that if the said stock had been voted by Stone under his proxy other and different directors would have been elected. There is prayer for judgment that the persons for whom Stone attempted to vote are the duly elected directors of the corporation.

The contract was made an exhibit to the complaint. By its terms the stockholders who were parties to it appointed Mr. Stone their attorney, with power to vote their stock, and with power to employ additional attorneys, bookkeepers, or agents in their interests, and

with authority to sell their stock if he could obtain a price of $30 per share or more for all of it, and if he had a less offer it was agreed that no sale of the stock would be made unless approved by a majority of the shares of stock represented. It is provided that the proxy is irrevocable except by a majority of at least 435 shares of the stock owned by the parties to the contract. It is also agreed that the stockholders will not sell or transfer their stock except as a unit.

It is conceded by the appellants that, notwithstanding a provision that it shall be irrevocable, a proxy is revocable unless it is "coupled with an interest." It is pointed out in Mechem on Agency, 2d Ed., Vol. 1, § 570, pp. 406, 407, that the "interest" which an agent may have in the execution of the authority vested in him is of three kinds: (1) An interest in being permitted to exercise the authority in order to earn his commissions. (2) Because he has parted with something of value, or incurred liability, or assumed obligations, looking to the exercise of the power as a means of reimbursement. (3) An interest in the thing itself concerning which the authority is to be exercised. The author says (page 407): "The first is the mere naked power, and is revocable at the will of the principal, as already seen, even though such revocation involves the breach of his agreement not to revoke it."

The appellants urge upon us two reasons why the proxy in this case is irrevocable: (1) "A service to perform with payment from the proceeds as provided in the proxy. . . ." (2) "The power to buy or sell as provided in the proxy. . . ." But there is no provision for the payment of services from the proceeds of the sale of stock, even if that should be considered an inci-

dent to the voting right, and there is no power to buy although there is authority to sell at a given price.

There is no allegation in the complaint that Mr. Stone had incurred any liability or assumed any obligation for which he was claiming reimbursement out of the proceeds of the stock if and when sold. If there was such a claim on the part of Mr. Stone, it cannot be seen that his right to reimbursement was jeopardized by the cancellation of his right to vote the stock as distinguished from his contract as agent to sell it.

The certificates of stock were not assigned or delivered to Mr. Stone, nor were they transferred on the books of the company. There are no allegations in the complaint disclosing the provisions of the stock certificates or the by-laws of the company with respect to voting or transferring stock. Our statutes have long required that a stock book be kept disclosing who are stockholders. The statute, § 25-207, Burns' 1933, § 4907, Baldwin's 1934, provides that every shareholder shall have a right to vote the shares of stock "standing in his name on the books of the corporation," and that: "The original stock register or transfer book, or a duplicate thereof kept in this state, shall be the only evidence as to who are the shareholders' entitled . . . to vote at any meeting of the shareholders." It is not disclosed by the complaint that the corporation was organized under any other statute. Former statutes required the maintenance of a stock book or register for the purpose of disclosing who are stockholders, and it is the general rule that the officers of the corporation can look no further than the legal title, as disclosed by the records of the corporation, in determining who is entitled to vote shares of stock at corporate meetings. See Fletcher Cyclopedia Corporations, Vol. 5, ch. 13, § 2033, p. 124; Cook

on Corporations, 8th Ed., Vol. 3, § 611, p. 2137; 13 American Jurisprudence, § 490, p. 528; 18 Corpus Juris Secundum, § 548, p. 1240. There is some authority to the effect that this rule is binding upon the officers of the corporation, but that the records are only *prima facie* evidence in court. These authorities need not be noticed in detail, since they involve unusual statutory provisions, fraud, stock of record in the name of fiduciaries, or other unusual situations involving principles not applicable to the situation in the case at bar.

We find no error.

Judgment affirmed.

NOTE.—Reported in 39 N. E. (2d) 433.