CRIPPIN PRINTING CORPORATION, an Indiana Corporation, and Donald E. Carnagua, in his capacity as shareholder-director; David R. Decker, in his capacity as shareholder-director; Norman L. Woods, in his capacity as shareholder-director, Appellants (Defendants Below),

v.

Bill J. ABEL, Appellee (Plaintiff Below).

No. 2–882A240.

Court of Appeals of Indiana, Second District.

Nov. 24, 1982.

Ronald E. Elberger, Rose McKinney & Evans, Indianapolis, for appellants.

John J. Dillon, William T. Rosenbaum, Irwin B. Levin, Dillon, Hardamon & Cohen, Indianapolis, for appellee.

SHIELDS, Judge.

Bill J. Abel (Abel) filed a complaint for corporate dissolution of Crippen Printing Corporation (Crippen) which further sought the appointment of a receiver during the pendency of the litigation. Abel sought the appointment of a receiver on the basis of an irreconcilable stockholder deadlock causing irreparable injury and damage to the corporation and on the basis of the corporation's actual, or imminent danger of, insolvency.

An emergency hearing on the limited issue of the appointment of a receiver was subsequently conducted. At the conclusion of the hearing the trial court appointed a receiver, having determined:

> "7. That without the proposed loan dated August 4th, 1982 the corporation would have difficulty continuing its normal operations.

"8. That an irrevocable dispute exists between the shareholders of the corporation.

"9. That there is a present danger of a serious suspension of, or interference with the conduct of the business with a consequent depreciation of the value of the assets of the corporation.

"10. That an emergency exists and irreparable harm will occur without intervention by the court.

"11. That the shareholders are deadlocked in the management of the corporate affairs and the corporation is suffering, or is about to suffer irreparable injury by reason thereof within the meaning of I.C. 23–1–7–3(a)(5).

"12. That the appointment of a receiver is necessary to protect the assets of the corporation and will serve a beneficial purpose for the shareholders."

Record at 364–65.

Crippen appeals and seeks review of the appointment of a receiver on two bases: Abel's standing to seek relief and the trial court's abuse of discretion in granting the relief.

■ Crippen argues Abel does not have standing to bring the primary action because of a Stock Purchase Agreement obligating Crippen shareholders to sell their stock when a termination of employment occurs.[1] Crippen uses Indiana cases *State ex rel. Berger et al. v. Rusche et al.* (1942)

219 Ind. 559, 39 N.E.2d 433; and *Doss v. Yingling* (1930) 95 Ind.App. 494, 172 N.E. 801 as authority. However, our examination of these cases reveals they concern disputes between shareholders, not disputes between a shareholder and a corporation as we have here.

*Breger* involved a proxy agreement and subsequent breach thereof wherein the court held the breaching shareholder had the right to vote despite the proxy agreement because the official record showed him to be the shareholder of record and "it is the general rule that the officers of the corporation can look no further than the legal title, as disclosed by the records of the corporation, in determining who is entitled to vote shares of stock at corporate meetings." *Breger,* 219 Ind. at 562, 39 N.E.2d at 435. That is still the rule. I.C. 23–1–2–9 (Burns Code Ed., 1973). *Breger* indicates a person has standing to sue a corporation if he or she appears as a shareholder of record on the official corporate record. Thus, this case, if anything, aids Abel.

*Doss* is inapposite to the standing question. It concerned the appropriateness of injunctive relief to stop a shareholder from selling his stock in violation of a shareholder agreement. Again, it was shareholder against shareholders; standing was not in issue.

We conclude the Agreement does not deprive Abel, as a shareholder of record,[2] of standing to bring suit against Crippin prior to the actual sale or transfer of his stock.

Standing is jurisdictional.

A motion was made by Donald Carnagua to terminate the employment of Bill Abel from Crippin Printing Corporation effective July 2, 1982 and to compensate him through the end of our fiscal year July 31, 1982. The motion was second by David Decker. Voting yes, to terminate Bill Abel as an employee, were Donald Carnagua, David Decker, and Norman Woods. Voting No was Bill Abel. Motion was carried.
The question concerning Bill Abel's stock will be directed to our respective attorneys."
Record at 237.

1. Minutes of a board of directors meeting held July 2, 1982 read:
"This Directors meeting was called to order at 10:10 A.M. by Acting President Bill Abel. A Discussion was held concerning the activities and employment of Bill Abel by Crippin Printing Corporation. A statement was recorded in the October 13, 1981 Board of Directors meeting that Bill Abel must devote more time to the activities required to be an employee of this corporation. His sales record for the current year and lack of performance as Acting President indicate he has not devoted the time required to be an employee of Crippin Printing Corporation.

2. There is no dispute about Abel's status as a shareholder of record.

"[W]ithout the jurisdictional element of a case or controversy any court is without power to render a decision. Therefore, it is the law that a court must first determine that a party with standing has brought the cause and that he brings a justiciable issue before the court. If such is not the situation, there is nothing before the court and the court is totally without jurisdiction to decide any issue in the cause."

*Board of Trustees v. City of Ft. Wayne* (1978) 268 Ind. 415, 375 N.E.2d 1112, 1117.

Abel meets this test. He is a shareholder of record[3] "and as such [has] an interest ... and should have ... an opportunity to be heard." *Tri-City Electric Service Co. v. Jarvis* (1933) 206 Ind. 5, 185 N.E. 136, 139. He also brings justiciable issues before the trial court regarding corporate deadlock and insolvency. The fact Crippin may have a cause of action against Abel for any breach of the Stock Purchase Agreement is a separate matter from the case before us on review. *See Griese-Traylor Corp. v. Lemmons* (1981) Ind.App., 424 N.E.2d 173; *Kruse, Kruse & Miklosko v. Beedy* (1976) 170 Ind.App. 373, 353 N.E.2d 514.

▇▇▇▇ Turning to Crippen's second issue, we acknowledge our scope of review of an interlocutory order appointing a receiver *pendente lite* is limited. This court will not weigh the evidence on appeal and, further, must construe the evidence along with all reasonable inferences in favor of the trial court's action. *McKinley v. Long* (1949) 227 Ind. 639, 88 N.E.2d 382. Further, because our standard of review is that of abuse of discretion, *U.S. Aircraft Financing, Inc. v. Jankovich* (1977) 173 Ind.App. 644, 365 N.E.2d 783, there must be a plain abuse of that power to the prejudice of the complaining party to warrant a reversal. *Mead v. Burk* (1901) 156 Ind. 577, 60 N.E. 338.

However, the appointment of a receiver is an extraordinary and drastic remedy to be exercised with great caution.

"The action affects one of man's most cherished and sacred rights guaranteed by the United States Constitution—the right to be secure in his property. This right is fundamental to every society in which men are free. For these reasons, the statute which grants such authority is to be strictly construed." (footnote omitted)

*State ex rel. Makar v. St. Joseph County Court* (1962) 242 Ind. 339, 179 N.E.2d 285, 289-90. Accordingly the standards by which the appointment can be justified are exceptionally stringent based upon the rationale that a court's power to appoint a receiver is in derogation of the fundamental right of the legal owner of property to possession. With these standards in mind, we review the trial court's appointment of a receiver in the instant case and find it erroneous.

Insolvency, or the imminent danger thereof, is a basis for the appointment of a receiver *pendente lite* under I.C. 34-1-12-1(5) (Burns Code Ed.1973). Such insolvency is the

"state of a person who is unable to pay his debts as they fall due in the usual course of trade or business.... By the word insolvency is meant a general inability to pay one's debts ..."

*Chicago v. S.E. Ry. Co. v. Kenney* (1910) 159 Ind. 72, 62 N.E. 26, 28.

With this definition in mind, we examine the trial court's finding

"7. That without the proposed loan dated August 4th, 1982 the corporation would have difficulty continuing its normal operations."

This finding on the issue of Crippen's financial situation negates the corporation's actual, or imminent danger of, insolvency as a basis for the appointment of a receiver. Implicit within the trial court's finding that without a loan the corporation would have difficulty continuing its normal operations are the findings: (a) with a loan there will be little or no difficulty and (b) absence of a loan will cause mere difficulty, but will not prevent operations from continuing, *i.e.*, will not prevent debts from being paid as

---

**3.** *See* I.C. 23-1-1-1(f) (Burns Code Ed., 1972).

due or cause imminent danger debts will not be paid as due.

Difficulty in continuing operations is indicative only of increased effort in attaining a goal and does not mean that the goal cannot be attained or there is imminent danger the goal is unattainable.

■ Therefore, I.C. 34–1–12–1(5) is not a sufficient basis, as a matter of law, for the trial court's action in appointing a receiver. In fact, the trial court acknowledged that fact by stating in its order that it was appointing the receiver pursuant to I.C. 23–1–7–3(a)(5), the statutory ground for dissolution of a corporation based upon shareholder or director deadlock in the management of a corporation with consequential irreparable injury therefrom.

■ We must disagree with the trial court's use of the dissolution statute as a basis for the appointment of a receiver. The receiver therein authorized is a receiver who shall proceed to liquidate. Therefore, of necessity, such a receiver is one appointed after a trial on the merits on the issue of statutory grounds for dissolution. However because we affirm on any basis supported by the record, we look to other provisions of I.C. 34–1–12–1, specifically, clauses 3 and 7.[4]

The trial court found an irrevocable dispute between the shareholders constituted a present danger of a serious suspension of or interference with the conduct of the business. Assuming, *arguendo* identity exists between the shareholders-directors in Crippen such that the shareholders constitute the management, we nevertheless cannot sustain the trial court's action in appointing a receiver on that basis.

The evidence reveals Crippen has four directors who are not deadlocked in that their vote has been three ayes, one nay. Thus, the directors, insofar as they constitute the management of the corporation, have not deadlocked. Turning to the share-

holders, the evidence reveals no difficulties of any nature at the *last* annual meeting and that the date for the next annual meeting had not yet arrived. However, Crippen's by-laws, provide a shareholder holding at least 25% of the outstanding shares may call a special meeting. Written notice of the special meeting containing the place, day, hour, and purpose of the meeting must be delivered or mailed to *each* stockholder at least ten (10) days before the meeting date. However, notice may be waived either by a sufficiently detailed written waiver or by attendance at the meeting. Further, the by-laws provide any director may be removed, with or without cause, and a successor selected, at any special meeting of the shareholders called for that purpose.

Abel attempted to implement the special meeting sections of Crippen's by-laws. On July 27, 1982, Abel caused notice to be sent to the other shareholders of a special meeting of shareholders to be held July 29, 1982 at 9:45 a.m. at a designated place to consider the removal and election of directors of the corporation. A board of directors meeting had previously been called for 10 a.m. on the same date at the same place. Two shareholders in addition to Abel were present for the meeting. However, because the remaining shareholder who had been present at the appointed place left before the appointed hour of the shareholder meeting, the special meeting was not held and a shareholder vote did not occur. Therefore, as of the time of the trial court's appointment of a receiver there was not a shareholder deadlock as reflected by any issue submitted to the shareholders for resolution.

■ Arguably, Abel's ownership of 50% of the outstanding stock of the corporation and his initiation of the subject action for dissolution could reasonably lead the trial court to infer that a shareholder deadlock is

---

4. "Third. In all actions when it is shown that the property, fund or rent, and profits in controversy, is in danger of being lost, removed or materially injured."

"Seventh. And in such other cases as may be provided by law; or where, in the discretion of

the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties."

I.C. 34–1–12–1(3), (7) (Burns Code Ed.)

in the making. However, we find, as a matter of law, a potential or even probable shareholder deadlock is of itself an insufficient basis for the appointment of a receiver *pendente lite*.

Rather, we hold the appointment of a receiver is appropriate only where there is dissention between sets of stockholders owning equal amounts of stock such that there is a present danger to the investors consisting of a serious suspension of or interference with the conduct of the business resulting in an imminent danger of dissipation of the corporate assets.

Examples of the dire circumstances which justify a receiver are found in *Sheridan Brick Works v. Marion Trust Co., Adm'r.* (1901) 157 Ind. 292, 61 N.E. 666; and *Dynamite Drugs, Inc. v. Kerch* (1937) 212 Ind. 568, 10 N.E.2d 624.

In *Sheridan Brick Works* our supreme court affirmed the trial court's appointment of a receiver *pendente lite* for a corporation whose stock was divided into 500 shares, 250 of which were owned and held by Oliver H. Root, 249 by Mason J. Osgood, and one share by Aquilla Q. Jones. These stockholders also constituted the directorate of the corporation. Prior to his death, Osgood served as the president and manager and Root was the secretary and treasurer. At a meeting held subsequent to Osgood's death, the stockholders were unable to agree upon persons to fill Osgood's positions. That disagreement continued resulting in the offices remaining vacant inasmuch as Root refused to call any other meeting. Furthermore, the corporate monies were unavailable to the corporation because checks required the president's countersignature. Meanwhile, Root, in violation of the corporate by-laws, assumed the management of the business and neglected to deposit the monies in the bank. Because of the money situation, numerous creditors were likely to commence suit to collect claims against the corporation. Indeed, one brickworks was idle because corporate money was not available to operate it and, consequently, it was rapidly deteriorating in value. Thus, the evidence showed no corporate management,

imminent insolvency, wrongful conduct, a vacant directorship and office, *and* shareholder dissension and disagreement with resultant dissipation of corporate assets.

*Dynamite Drugs, Inc.* involved a corporation whose shares were equally divided between Kerch, the plaintiff, and Taylor. The trial court found that the corporate business, a drug store, had been mismanaged because its affairs had not been handled by its board of directors. Further, the corporate officers had not been properly elected. In addition, there had not been a proper accounting for the operation and unpaid accounts were owing as a result of which legal action was threatened which could have resulted in dissipation of the corporate assets. Lastly, the trial court found the corporation was in imminent danger of insolvency.

■ The record in this case fails to reveal any evidence of a serious suspension of or interference with the conduct of the corporate business resulting in a depreciation of the value of the corporate assets. There is no indication whatsoever that the day-to-day, normal operation of Crippen as an ongoing business is in any way impaired. Rather, the evidence reveals the dispute concerns the decision to borrow additional monies (August 4, 1982 loan) which the trial court found would result in the "assets of the corporation ... [being] virtually completely collaterized." However, we fail to perceive how that event, should it occur, endangers the ability of Crippen to carry on its business. Indeed, the trial court found the *quid pro quo* for the collateralization, the proceeds of the loan, would *avoid* "difficulty" in continuing its normal operations. Further, the loan does not depreciate the assets of the corporation. Certainly the loan receipts are an offsetting asset, at least without a showing of offsetting accounts payable by the corporation.

Additionally, Abel makes a compelling argument that the evidence reveals the stockholders' disagreement concerning the loan has resolved itself. Abel points to evidence that the loan letter of commitment requires personal guarantees of four stockholders and that he did not intend to sign such a

guarantee. In addition, the commitment required Crippen to receive the stock certificates of Abel and another stockholder free and clear of all liens and encumbrances and Abel's stock certificate was subject to a lien of $18,000 that he was unable to pay. Also, the conditional letter of commitment would expire without notice on or before August 10, 1982, whereas the emergency hearing which resulted in the appointment of a receiver was held August 6, 1982 thereby rendering Crippen unable to timely close the loan. Such an inability according to the trial court's findings, would leave the corporation in a "difficult" position. However, as discussed earlier, difficulty and insolvency are not synonymous.

Therefore, while such a dispute indeed constitutes a disagreement, it does not, standing alone, constitute a serious suspension of the business with a resulting imminent danger of the dissipation of the corporate assets. In other words, the evidence must be clear and convincing before the extraordinary remedy of a receiver will issue, and Abel failed to meet this heavy burden.

Finally, to the extent there is disagreement as to Abel's status within the corporation as a stockholder, due to the terms of the stock purchase agreement or as an officer and/or employee, remedies other than the extreme remedy of receivership, are appropriate.

> "It is, we think, axiomatic that a receiver should not be appointed if the plaintiff has an adequate remedy at law or by way of temporary injunction. This rule was expressed in *Fagan etc. et al. v. Clark et al.* (1958), 238 Ind. 22, 148 N.E.2d 407, where the court said at page 26 [148 N.E.2d 407], '[r]elief by receivership is an extraordinary remedy and is never exercised if there is an adequate remedy at law or the harm can be prevented by injunction or restraining order.'"

*Ziffrin Truck Lines, Inc. v. Ziffrin* (1961) 242 Ind. 544, 547, 180 N.E.2d 370, 372.

In *Ziffrin Truck Lines, Inc.* the appointment of a receiver was, in part, sought by a shareholder because the plaintiff was no longer on the payroll of the corporation, the corporation had borrowed $50,000, there were several months during which the corporation operated at a loss, the management of the corporation was depriving plaintiff of an interest in the corporate surplus and possible dividends. Our supreme court reversed the appointment of a receiver *pendente lite* on the basis the evidence failed to disclose either an emergency or an inadequate remedy at law. Thus if Crippen should seek to wrongfully deny Abel his appropriate status, whatever it may be, that wrongful action may be the subject of a less extreme equitable remedy.

Accordingly, the judgment of the trial court is reversed, the appointment of a receiver vacated, and the cause remanded for further proceedings consistent with this opinion.

BUCHANAN, C.J., and SULLIVAN, J., concur.