Elmer E. JOHNSON and Pauline J. Johnson, Defendants-Appellants,

v.

LA PORTE BANK & TRUST CO., Plaintiff-Appellee.

No. 3–983A284.

Court of Appeals of Indiana, Third District.

Nov. 7, 1984.

Wesley G. Kipp, LaPorte, for defendants-appellants.

Martin W. Kus, Newby, Lewis, Kaminski & Jones, LaPorte, for plaintiff-appellee.

GARRARD, Judge.

This is an interlocutory appeal from the trial court's order appointing a receiver to take possession of real estate owned by Elmer E. and Pauline J. Johnson. The receiver was appointed after a hearing on the petition of the LaPorte Bank & Trust Company (the bank) pending the litigation of the bank's complaint against the Johnsons. The bank alleged in its complaint that, on June 29, 1979, the Johnsons had executed and delivered a note to the bank in the amount of $30,000 and a mortgage on part of their real estate securing the note. The bank alleged the Johnsons were in default and sought judgment for the amount of the note outstanding plus interest and reasonable attorney's fees. The bank further sought an order foreclosing the mortgage.

The issues raised by the Johnsons on this appeal, as restated, are:

I. Whether the trial court erroneously applied a statute which may be applied to the appointment of a receiver only *after* judgment and pending a foreclosure sale.

II. Whether there was sufficient evidence to support the appointment of a receiver pursuant to the applicable statute.

### I. Statutes authorizing appointment of a receiver.

The Johnsons contend the trial court erroneously applied IC 32–8–16–7 when it appointed a receiver. They contend IC 34–1–12–1 is the proper statute to be applied to a case such as this one involving the appointment of a receiver prior and ancillary to the trial on the merits of the complaint. In its brief the bank acknowledges that IC 34–1–12–1 is the applicable statute but insists the court appointed the receiver pursuant to that statute despite the court's references to IC 32–8–16–7 during the hearing.

IC 34–1–12–1 *et seq.* is entitled, "Receivers and Deposits in Court." Section One of Chapter 12 provides:

"A receiver may be appointed by the court, or the judge thereof in vacation, in the following cases:

First. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim.

Second. In actions between partners, or persons jointly interested in any property or fund.

Third. In all actions when it is shown that the property, fund or rent, and profits in controversy, is in danger of being lost, removed or materially injured.

Fourth. In actions by a mortgagee for the foreclosure of a mortgage, and the sale of the mortgaged property, when it appears that such property is in danger of being lost, removed or materially injured; or when such property is not sufficient to discharge the mortgaged debt, to secure the application of the rents and profits accruing before a sale can be had.

Fifth. When a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights.

Sixth. To protect or preserve, during the time allowed for redemption, any real estate or interest therein sold on execution of order of sale, and to secure to the person entitled thereto the rents and profits thereof.

"Seventh. And in such other cases as may be provided by law; or where, in the discretion of the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties. [Acts 1881 (Spec. Sess.), ch. 38, Section 245, p. 240.]"

IC 32–8–16–7 is part of a chapter entitled, "Mortgages—Foreclosure—Redemption, Sale, Right to Retain Possession." This section provides:

"In all cases at any time prior to such sale, the court upon the application of the plaintiff may appoint a receiver who shall take possession of the mortgaged premises, collect the rents, issues, income and profits thereof and apply the same to the payment of all taxes, assessments, insurance premiums and repairs required in his judgment to preserve the security of the mortgage debt, and promptly file his final report thereof with the clerk of said court, and subject to the approval of said court account for and pay over to the clerk, subject to the further order of the court, any balance of such income or other avails in his possession then remaining; Provided, That if the mortgaged premises is actually occupied as a dwelling by the record owner of the fee-simple title, he shall be permitted to retain possession thereof, rent free, until such sale, so long as he continues to pay the taxes and special assessments levied against such mortgaged premises and does not suffer waste or other damage to the premises, in the judgment of the court. If the record owner of the fee-simple title does not pay the taxes and special assessments levied against the mortgaged premises, he shall be permitted to retain possession of that part of the mortgaged premises, not exceeding fifteen [15] acres, which is actually occupied as a dwelling by the record owner of the fee-simple title, rent free, until such sale, so long as he does not suffer waste or other damage to the premises in the judgment of the court; and, Provided, further, That the owner of any crops growing on the mortgaged premises at the time of the commencement of such action, other than the owners of fee-simple title or his or her assigns, shall have the right to enter said premises and care for and harvest said crops at any time within one [1] year from the time of filing such action. [Acts 1931, ch. 90, Section 7, p. 257.]"

 While it is necessary for us to distinguish these two statutes in ruling on this appeal, we need not speculate as to which statute the court had in mind when making its order.[1] A court entering an

---

1. During the course of the hearing on the bank's petition for the appointment of a receiver, the trial court twice made reference to IC 32–8–16–7. The first reference was as follows:

"COURT: Well, I presume Mr. Kipp [counsel for the Johnsons], that the 7th paragraph of 34–1–12–1 in effect is saying that, 'a Receiver can be appointed in such other cases and may be provided by law,' provides that the court can follow Section 32–8–16–7. Are you familiar with that?

MR. KIPP: Not at this moment, your Honor.
COURT: [reciting IC 32–8–16–7 in its entirety]"

Record at 115–17. The second reference came after Kipp argued that the main criterion for the appointment of a receiver was whether the market value of the mortgaged property was sufficient to cover the secured debt. The court responded that Kipp's argument was not true under IC 32–8–16–7. The court then asked Kipp if

interlocutory order appointing a receiver is not required to make special findings of fact and conclusions of law. Trial Rule 52; *Kist v. Coughlin* (1936), 210 Ind. 622, 1 N.E.2d 602, 604. The court here entered a general judgment in favor of LaPorte Bank on its petition. General judgments are presumed to be based upon findings supported by the evidence. We will affirm if the trial court's judgment can be sustained on any legal theory. *Vector Engineering & Manufacturing Corporation v. Pequet* (1982), Ind.App., 431 N.E.2d 503, 504. Our duty then is to determine whether this was an action in which the facts allowed the appointment of a receiver. *Kist v. Coughlin, supra*, 1 N.E.2d at 604. That issue, the sufficiency of the evidence, will be considered in the second part of this opinion. First, however, we must determine which statute does apply so that the sufficiency of the evidence can be appropriately measured in light of the statutory requirements.

IC 34–1–12–1 contains six clauses which authorize a court to appoint a receiver in specific situations if certain conditions are met. A seventh clause gives a court discretion to appoint a receiver where "necessary to secure ample justice to the parties." To affirm the appointment of a receiver under IC 34–1–12–1 we only need find sufficient evidence to satisfy the conditions set out in that section.

IC 32–8–16–7 is seemingly without the conditional restrictions of IC 34–1–12–1. This section begins:

> "[I]n all cases at any time prior to such sale, the court upon the application of the plaintiff may appoint a receiver who shall take possession of the mortgaged premises, collect the rents, issues, income and profits thereof and apply the same to the payment of all taxes, assessments, insurance premiums and repairs required in his judgment to preserve the security of the mortgage debts ...." [2]

The clause "In all cases at any time prior to such sale ...." refers to the sale of mortgaged real estate to satisfy the judgment debt of the mortgagor. The sale is authorized by IC 32–8–16–1 [3] which first provides a period of at least three months from the filing of the complaint for foreclosure before "process shall issue for the execution of any such judgment or decree of sale ...." [4]

■ The applicability of IC 32–8–16–7 does not appear to be limited to the appointment of receivers only after judgment and prior to sale as suggested by the Johnsons in their brief. When construing a single section of a statute we view that section with due regard for all other sections of the statute. *Park 100 Development Company v. Indiana Dept. of State Revenue* (1981), Ind., 429 N.E.2d 220, 222–23. The time reference of IC 32–8–16–1 is the filing of the complaint. While no sale may proceed until after a three-month period (for mortgages executed on or after July 1, 1975) and after a copy of the judgment and decree of sale has been issued to the sheriff, the appointment of a receiver under IC 32–8–16–7 is not made dependent on any intervening event. A receiver is appointed to preserve the property pending its final disposition. This protective purpose is as vital when the suit is originally filed as it is after the judgment is entered.

it was his position that IC 32–8–16–7 did not apply. Record at 160–61.

**2.** The language of the court's order appointing the receiver closely parallels the statutory language.
> "(1) Robert Ott ... is hereby appointed Receiver herein, to take possession of the ... real estate ....
> (2) Said Receiver ... shall collect the rents and prophits [sic] therefrom, and shall receive, hold and disburse the same for taxes, insurance, assessments or necessary repairs and any other expenditures that may be necessary to protect and conserve the real estate, *all as provided by statute* ...."
Record at 45–46 (our emphasis).

**3.** The amendment to this section effective January 1, 1984 does not affect our disposition of the present case.

**4.** This section protects the mortgagor from sale of the mortgaged property for at least three months. IC 32–8–16–3 additionally provides for redemption at any time prior to the sale.

The more important question to be answered, however, is whether the general authority to appoint a receiver seemingly granted by IC 32–8–16–7 must be viewed in light of the more specific guidelines of IC 34–1–12–1. We think it must. The legislative history of these statutes aids our analysis.

IC 34–1–12–1 had its origin in the Revised Statutes of 1852. Section 199 of the 1852 Act provided for the appointment of a receiver in all the cases which are presently covered by IC 34–1–12–1 but without what is now Clause Sixth:

> "Sixth. To protect or preserve, during the time allowed for redemption, any real estate or interest therein sold on execution or order of sale, and to secure to the person entitled thereto the rents and profits thereof."

The present Clause Seventh appeared in the original act as Clause Sixth.

The present Clause Sixth was added by Acts 1881, ch. 38, Section 245, p. 283 which contributed the entire language eventually appearing as Section 3–2601, Burns, and now codified as IC 34–1–12–1. The significance of the addition of Clause Sixth was the concurrent enactment of Acts 1881, ch. 88, Section 1, p. 593 and Acts 1881, ch. 38, Section 542, p. 240. These acts, subsequently codified in what became Section 2–3901 *et seq.*, Burns, allowed the post-judgment sale of real estate to proceed after judgment upon proper notice but recognized that a condition to the sale was a one-year period of redemption available to the owner of the real estate. The purchaser would be issued a certificate of purchase which entitled the purchaser to a conveyance of the real estate only after the one-year redemption period. Section 2–3909. Clause Sixth thus provided for the appointment of a receiver when necessary after

the sale of real estate and during the period allowed for redemption.

Later, Section 2–3901 *et seq.*, Burns was replaced by Section 3–1801 *et seq.*, Burns (Acts 1931, ch. 90, p. 257) for mortgages executed after June 1931. Section 3–1807 was part of the enactment and since has been recodified as the present IC 32–8–16–7. Prior to the section's enactment no mention was made in the redemption statute concerning the appointment of a receiver. A court's discretion as to when a receiver could be appointed had always been guided by the seven clauses of what is now IC 34–1–12–1.[5]

In 1931, Section 3–1807 allowed the appointment of a receiver at any time prior to the foreclosure sale while Section 3–2601 placed specific restrictions on such appointment. The same situation exists today with IC 32–8–16–7 and IC 34–1–12–1. Reference to the rules of statutory construction aids our determination of whether IC 32–8–16–7 provides independent authority to appoint a receiver at any time or whether the appointment of a receiver in any event must be based on the conditions of IC 34–1–12–1.

▆ In construing a statute our foremost concern is to determine and give effect to the true intent of the legislature. *Thompson v. Thompson* (1972), 259 Ind. 266, 286 N.E.2d 657. Sometimes the legislature's intent is evident from the clear and unambiguous language of the statute. However, where the meaning of the language is ambiguous or where more than one construction of the statute is possible, we will construe the statute to determine the apparent legislative intent. *Dague v. Piper Aircraft Corp.* (1981), Ind., 418 N.E.2d 207. Where two statutes deal with the same subject matter, we should read them together and attempt to construe

---

5. A possible unintended effect of the enactment of Section 3–1801 *et seq.* was to emasculate Clause Sixth of Section 3–2601 without actually repealing it. Beginning with mortgages executed after June 1931, there no longer is a period of redemption *after* sale. There is instead a stay of execution of any decree of sale for a period measured from the filing of the

complaint and provision for redemption at any time *prior* to the sale. Clause Sixth was enacted when the period of redemption followed the sale. It allowed a receiver to be appointed to protect the already sold property during the time allowed for redemption, a situation which cannot exist under the present law.

them harmoniously, giving effect to each. *Matter of Lemond* (1980), 274 Ind. 505, 413 N.E.2d 228. While the later of two statutes covering the same subject matter is controlling as to any *conflicting* provisions, *Brumfield v. State ex rel. Wallace* (1934), 206 Ind. 647, 190 N.E. 863, a later statute covering in general terms the same subject classified specifically in an earlier statute will be construed in harmony with the earlier statute's qualifications. *State ex rel. Martin v. Graham* (1915), 183 Ind. 53, 108 N.E. 111. Both statutes should be construed so as to avoid an absurd result. *State ex rel. Glenn v. Smith* (1949), 227 Ind. 599, 87 N.E.2d 813.

We think IC 32–8–16–7 is susceptible to more than one construction. However, we do not believe the legislature intended the statute to allow the appointment of a receiver for real estate without any qualification upon the mere filing of a complaint for foreclosure. "The appointment of a receiver is an extraordinary and drastic remedy to be exercised with great caution." *Crippin Printing Corp. v. Abel* (1982), Ind.App., 441 N.E.2d 1002, 1005. It is a statutorily granted authority which must be strictly construed. *State ex rel. Makar v. St. Joseph County Circuit Court* (1962), 242 Ind. 339, 179 N.E.2d 285. The appointment of a receiver cannot be sustained unless proper statutory grounds for the appointment are sufficiently shown. *U.S. Aircraft Financing Inc. v. Jankovich* (1977), 173 Ind.App. 644, 365 N.E.2d 783.

IC 34–1–12–1 protects against the indiscriminate appointment of receivers by specifically listing the cases in which such appointment is appropriate. If IC 32–8–16–7 is read without reference to IC 34–1–12–1, Clause Fourth of the latter statute is rendered meaningless. That clause's conditions for the appointment of a receiver in actions for foreclosure would be given no effect if a receiver could be appointed in all foreclosure cases between the filing of the complaint and the foreclosure sale.

The major part of IC 32–8–16–7 provides the mechanics of the receiver's appointment, his or her duties and the rights of certain owners. Despite that statute's apparent unqualified grant of authority to appoint a receiver, we believe the statute must be read in light of the earlier statute's qualifications and that the authority for the appointment of the receiver still must be found in one of the clauses of IC 34–1–12–1.

*II. Sufficiency of the evidence.*

Accordingly, we must examine the sufficiency of the evidence to sustain the appointment of a receiver pursuant to the requirements of IC 34–1–12–1. We are mindful of our limited role on review of the trial court's order.

"This court will not weigh the evidence on appeal and, further, must construe the evidence along with all reasonable inferences in favor of the trial court's action. *McKinley v. Long* (1949), 227 Ind. 639, 88 N.E.2d 382. Further, because our standard of review is that of abuse of discretion, *U.S. Aircraft Financing, Inc. v. Jankovich* (1977), 173 Ind.App. 644, 365 N.E.2d 783, there must be a plain abuse of that power to the prejudice of the complaining party to warrant a reversal. *Mead v. Burk* (1901), 156 Ind. 577, 60 N.E. 338."

*Crippin Printing Corp. v. Abel, supra* at 1005. With these guidelines in mind, we look to the evidence before the trial court in this case.

To secure the payment of the $30,000 note owed to the bank, the Johnsons mortgaged to the bank a .47 acre tract of land which was the site of a grocery store they operated from 1973 through 1981. On January 30, 1981, the Johnsons executed a second mortgage, covering the store property and their separate residence, to Anchor Savings & Loan (Anchor).

Sometime in 1980, the Johnsons became delinquent in making the required payments to the bank. Late in 1981 the bank understood the Johnsons to say they would bring the note up to date with the down payment on a sale of the mortgaged property to Sleiman Mroueh. Additionally,

monthly payments of $900.00 on the "land contract" were to be made directly to the bank which would apply part to payment of their note and remit the rest to Anchor for payment on Anchor's loan to the Johnsons. However, the agreement between the Johnsons and Mroueh was a lease with an option to purchase. The $900.00 payments made by Mroueh to the bank represented the monthly rental payments pursuant to the lease.

After receiving three $900.00 payments and sending part to Anchor, the bank determined that no sale had been made and that the Johnsons would not be bringing their indebtedness up to date. The bank put the next two payments into an escrow account. Because the bank's action resulted in Anchor not being paid, Mroueh made further rental payments directly to the Johnsons. The Johnsons continued payments to Anchor but made no more payments to the bank. The bank's suit followed.

The bank seeks to collect $32,888.58, including interest, from the Johnsons. They additionally have asked the court to award attorney's fees in the amount of $3,300. Other amounts allegedly owed by the Johnsons in connection with the mortgaged land are delinquent real estate taxes of approximately $2,000 and an Internal Revenue Service Tax lien of $1,227.01. Three judgment creditors were also named in the suit.

When the mortgage to the bank was executed, the property was appraised at a value of $79,000. Mroueh offered the Johnsons $40,000 for the property but the Johnsons declined to sell at that price. On May 9, 1983, a realtor listed the property for $65,000. The realtor believed the fair market value of the property to be between $60,000 and $65,000. The property had not been shown by the realtor at the time of the August 26, 1983 hearing on the appointment of the receiver.

■ The above facts do not establish a basis for the appointment of a receiver under IC 34-1-12-1. The statute allows the appointment of a receiver:

"Fourth. In actions by a mortgagee for the foreclosure of a mortgage, and the sale of the mortgaged property, when it appears that such property is in danger of being lost, removed or materially injured; or when such property is not sufficient to discharge the mortgaged debt, to secure the application of the rents and profits accruing before a sale can be had.

\* \* \* \* \* \*

Seventh. And in such other cases as may be provided by law; or where, in the discretion of the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties."

It cannot be denied that Clause Fourth deals specifically with the case here presented and that the conditions of the clause have not been met. We need not consider Clause Seventh because "to secure ample justice to the parties" in a mortgage foreclosure case is to be accomplished pursuant to Clause Fourth by the appointment of a receiver if the value of the property is not sufficient to discharge the mortgaged debt. Clause Seventh is merely a general statement of the equitable nature of this statutory power, a power that "should be exercised only when it is clear that no other full and adequate remedy exists whereby justice between the parties may be affected and a wrong prevented." *Ziffrin v. Ziffrin* (1962), 242 Ind. 351, 179 N.E.2d 276, 279. The Indiana Supreme Court has reversed the appointment of receivers *pendente lite* or affirmed their denial where the applicant failed to show the absence of an adequate remedy at law, i.e., a failure to show that prosecution of the underlying suit would not provide the full relief sought. *Ziffrin v. Ziffrin, supra* (no showing that co-tenant's suit for an accounting would be adversely affected by the failure to appoint a receiver); *Kleinmeyer, Jr. v. Sears, Roebuck & Co.* (1957), 236 Ind. 663, 142 N.E.2d 918 (no showing suit to foreclose mechanic's lien would suffer where the real estate securing the lien had value $5,000 greater than the indebtedness and property not in danger of being lost or materially injured);

*Aetna Life Insurance Company v. Broeker* (1906), 166 Ind. 576, 77 N.E. 1092 (no showing that property was of insufficient value to secure the payment of the mortgage debt).

The amount owed to the bank by the Johnsons was almost $33,000. The lowest estimate of the mortgaged property's value was $40,000, the amount Mroueh was willing to pay for the property. The bank's own estimate of the property value in 1979 was $79,000. A realtor believed the property to have a fair market value of at least $60,000. Although the exact market value of the property is unclear, it is clear that the value exceeds the amount of the indebtedness secured by the mortgage. Since there was alternatively no evidence that the property was "in danger of being lost, removed or materially injured ...." we find no basis for the appointment of a receiver in this case.

Finally, we note that covenant 20 of the mortgage agreement provided that upon default by the Johnsons, the bank would "be entitled, *to the extent provided by applicable law,* to have a receiver appointed ...." (emphasis added). This covenant adds nothing to the contract because the appointment of a receiver with or without such a covenant depends upon proper application of the statute. *See Stadium Realty Corporation v. Dill* (1954), 233 Ind. 378, 119 N.E.2d 893.

For the foregoing reasons the order of the trial court appointing a receiver must be reversed.

Reversed.

STATON, P.J., and HOFFMAN, J., concur.