John GRESS, Appellant–Plaintiff,

v.

FABCON, INC., Appellee–Defendant.

No. 49A02–0409–CV–751.

Court of Appeals of Indiana.

Feb. 1, 2005.

Publication Ordered April 22, 2005.

John F. Ittenbach, Richard Trettin, Indianapolis, IN, Attorneys for Appellant.

Harold R. Bickham, Mark W. Clark, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff John Gress appeals the trial court's grant of summary judgment in favor of appellee-defendant Fabcon, Inc. Specifically, Gress raises two issues, which we consolidate and restate as whether the trial court correctly granted partial summary judgment in favor of Fabcon upon his complaint seeking unpaid commissions from his employment with Fabcon.

### FACTS

Gress was employed by Fabcon as a Sales Engineer, Regional Sales Manager,

and National Accounts Manager on an at-will basis from March 1995 until February 9, 2001. Fabcon was engaged in the manufacture and sale of precast wall panels and hollow core decks. Gress's general job responsibilities included soliciting and developing new business for Fabcon, bidding/negotiating contracts, and participating in each of his projects through the final project billing, collection, and closure.

Gress was paid on both a salary and commission basis. At the time of his separation from Fabcon, Gress received a base salary of approximately $46,000 per year. Gress was also eligible to receive commission payments, which represented either unearned advance payment for jobs shipped but not completed or final earned commissions on jobs for which all costs were paid and actual profitability had been determined. The payments were made on approximately the fifteenth of every month. The monthly commission payments fluctuated from month to month depending on the degree of activity on the salesman's jobs in the prior month, whether the projects were closed out, and whether the projects were profitable. Once a project was shipped, Fabcon tendered an estimated advance payment to the salesperson based on the anticipated profitability.

When the project was "closed out," the final commission was calculated and those sums due to the salesperson, if any, were paid. A job was closed out when the accounting department determined that all job costs had been paid, the final payment had been received, and the actual profitability of the project could be determined. This process could take anywhere from several months to a couple of years after shipment. Meanwhile, the salesperson received a monthly commission report registering the status of his various projects.

After the project was closed out, if it was less profitable than anticipated, the salesperson might receive no additional commission. And if Fabcon lost money or earned no profit on the project, the salesperson had to reimburse Fabcon for some or all of the advance payment that had been tendered to him at the time the job was shipped.

After Gress left the company, Fabcon tendered him a check in the amount of $18,309.47, representing its calculation of commission payments that were owed to him at the time. In the accompanying letter, Fabcon indicated that an additional payment would be forthcoming. Fabcon later sought to close out any commission payments owed on Gress's outstanding jobs, but Gress rejected Fabcon's offer, contending that it was not the full amount that he was owed.

Gress filed suit against Fabcon on May 30, 2001, alleging that Fabcon had violated the Wage Payment Statute [1] by failing to pay his commission within the statutory period. Fabcon moved for partial summary judgment on September 26, 2003, arguing that the payments that Gress sought were not "wages" under the Wage Payment Statute. The trial court conducted a hearing on January 23, 2004, and granted partial summary judgment to Fabcon, concluding that Gress's commissions were not wages within the meaning of the statute. On April 26, 2004, the trial court certified its ruling for interlocutory appeal, and we accepted jurisdiction on March 24, 2004. However, Gress did not pursue the matter with us at that time. On July 22, 2004, Fabcon filed a request to make the trial court's ruling final. The trial court granted Fabcon's request and entered a final appealable judgment in favor of Fabcon. Gress now appeals.

---

1. Ind.Code § 22–2–5–1, et seq.

## DISCUSSION AND DECISION

■ Gress argues that the trial court erred in granting Fabcon's motion for partial summary judgment. Specifically, Gress alleges that the trial court erred when it concluded that his commissions were not "wages" under the Indiana Wage Payment Statute as a matter of law.

We note that when reviewing the grant or denial of a summary judgment motion, we apply the same legal standard as the trial court. *Mattingly v. Warrick County Drainage Bd.*, 743 N.E.2d 1245, 1247 (Ind. Ct.App.2001). As we stated in *Little Beverage Co., Inc. v. DePrez*, 777 N.E.2d 74, 77–78 (Ind.Ct.App.2002):

> [S]ummary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Our standard of review is not altered by cross motions for summary judgment on the same issues. A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. The movant must demonstrate the absence of any genuine issue of fact as to a determinative issue and only then is the non-movant required to come forward with contrary evidence. This court may not search the entire record but may only consider the evidence that has been specifically designated. All pleadings, affidavits, and testimony are construed liberally and in a light most favorable to the nonmoving party.

(citations omitted).

■ Gress can prevail on his claim under the Wage Payment Statute only if the payments he seeks are "wages," as defined by the statute. The Wage Payment Statute requires that every employer pay its employees "at least semi-monthly or biweekly, if requested, the amount due such employee" and that "[p]ayment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment." Ind.Code § 22-2-5-1. The failure to do so subjects the employer to liquidated damages of ten percent of the amount due for each day that the amount due remains unpaid. I.C. § 22-2-5-2. The Indiana Code defines "wages" for purposes of the Wage Payment Statute as, "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." I.C. § 22-2-9-1(b).

■ The name given to the method of compensation is not controlling. *Gurnik v. Lee*, 587 N.E.2d 706, 709 (Ind.Ct.App. 1992). Rather, we will consider the substance of the compensation to determine whether it is a wage, and therefore subject to the Wage Payment Statute. *Id.* We have recognized that wages are "something akin to the wages paid on a regular periodic basis for regular work done by the employee...." *Wank v. St. Francis College*, 740 N.E.2d 908, 912 (Ind.Ct.App. 2000). In other words, if compensation is not linked to the amount of work done by the employee or if the compensation is based on the financial success of the employer, it is not a "wage." *Pyle v. Nat'l Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind.Ct.App.1994).

A recent decision by our supreme court is instructive. In *Highhouse v. Midwest Orthopedic Institute, P.C.*, 807 N.E.2d 737 (Ind.2004), a former employee physician sued in order to collect an unpaid bonus calculated on the basis of the employer's collections for services rendered by the former employee, less an allocation of expenses of the employer's operations. Our supreme court concluded that compensation constitutes "wages" only if it is com-

pensation for time worked and is not linked to a contingency such as the financial success of the company. *Id.* at 740. Compensation that is contingent upon determining the employer's financial success long after the work is performed is different from and inconsistent with the routine type of pay due ten days after it is earned. *Id.* Therefore, our supreme court ruled in favor of the employer and concluded that Highhouse's bonus did not constitute "wages." *Id.*

Here, Fabcon's commission program is based upon the profitability of the salesperson's individual projects. The salesperson earns no commission if the project does not result in a profit for Fabcon. The payment of commissions was not directly linked to the amount of work performed by Gress. To be sure, a salesperson could work for an entire year without earning any commissions if none of the projects were profitable. Appellee's App. p. 17–18. Moreover, although the commissions were paid once each month, the payments were based on the previous month's accounting events for the project—whether all job costs had been paid, whether the job had "closed out," and whether any determination had been made with respect to profitability—rather than on work performed by Gress in the previous month. *Id.* at 12, 23–24. In short, because of the length of time involved in determining the final commission, it was simply impossible for Fabcon to know what Gress was owed within ten days. In light of all this, we agree with the trial court that Gress's commissions were not "wages" within the purview of the Indiana Wage Payment Statute.

The judgment of the trial court is affirmed.

SHARPNACK, J., and FRIEDLANDER, J., concur.

## ORDER

This Court having heretofore handed down its opinion in this appeal on February 1, 2005, marked Memorandum Decisions, Not for Publication. No Rehearing or Transfer was sought and the opinion was certified on March 17, 2005.

The parties, by their respective counsel, have now filed their Joint Motion for Publication of Memorandum Decision, alleging therein that Indiana's Wage Payment Statute, I.C. 22–2–5–1, *et seq.*, has caused considerable disagreement among employers and employees regarding its proper interpretation. The parties allege that this court's decision in this appeal offers meaningful clarity and guidance on these matters and would serve to benefit practitioners and interested persons. The parties further allege that the decision establishes and/or clarifies a rule of law by establishing that commissions may, depending on the contingent nature of the compensation, fall outside of the Indiana Wage Payment Statute's definition of wages and that because the term "wages" has been a continuing source of dispute and litigation, the Court's decision with respect to contingent commissions also resolves an issue of fact and law of unique interest and substantial importance.

The parties therefore jointly request that this court publish its Memorandum Decision in this appeal.

The Court having reviewed its opinion, having examined said Joint Motion and being duly advised, now finds that said Joint Motion for Publication should be granted.

IT IS THEREFORE ORDERED that the parties' Joint Motion for Publication of Memorandum Decision is GRANTED. This Court's decision heretofore handed down in this cause on February 1, 2005,

marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.