**Paul M. DAVIS, Appellant/Plaintiff,**

v.

**ALL AMERICAN SIDING & WINDOWS, INC., Appellee/Defendant.**

**No. 49A02–0805–CV–462.**

Court of Appeals of Indiana.

Nov. 19, 2008.

Rehearing Denied Feb. 9, 2009.

---

Stephen M. Gentry, Indianapolis, IN, Attorney for Appellant.

Edward E. Hollis, John O. Gaidoo, Baker & Daniels, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Plaintiff Paul M. Davis appeals from the trial court's grant of summary judgment in favor of Appellee/Defendant All American Siding & Windows, Inc. ("All American"). Davis contends that All American is obligated to pay him commissions he allegedly earned before terminating his employment with All American and that those commissions are subject to the Indiana Wage Payment Statute. We reverse and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

On April 3, 2006, All American hired Davis as a salesman of siding, windows, and other materials for the remodeling and repair of residences. Immediately after Davis was hired, he underwent four weeks of training, for which All American paid him $1916.70. A few days before being hired, Davis had signed a document entitled "Training Pay & Commission Information[,]" ("the Agreement") which provided, *inter alia,* that All American was authorized to withhold his training pay if any termination in employment occurred within 180 days.

On May 1, 2006, Davis began selling All American products on his own. All American would provide sales leads to Davis, who would then contact the potential customer. Davis would evaluate the project, negotiate the "contract price[,]" and calculate the "par job cost[.]" Appellant's App. p. 14. The par job cost was the amount that All American would like to receive for a particular job and was based on a "par sheet" detailing the nature of the job. Appellant's App. p. 102. At least in Davis's case, the commission for a given sale was to be ten percent of the contract price or sixty-five percent of the difference be-

tween the contract price and the par job cost, whichever was greater.

In an All American project that went to fruition, the prospective customer would sign an "Offer to Contract" that was submitted to All American for consideration. At this point, All American would attempt to obtain financing for the customer, and, if successful, would order, prepare, and install the material for the project. Also, All American would, at times, renegotiate the price the customer would pay for the project or recalculate the par job cost, which in Davis's case, resulted in some adjusted prices that were under the adjusted par job cost. In this event, All American subtracted the amount less than the par job cost from Davis's ten percent commission.

After the installation was complete, All American would request "funding" for the project equaling the contract price. After a project was "funded," or fully paid for, the salesperson's commission would be calculated and paid. On the other hand, if a project was rejected (because All American could not obtain financing) or "kicked" (because a customer did not pay), Davis was not entitled to receive any commission.

On June 19, 2006, Davis voluntarily left his employment at All American. In addition to the $1916.70 in training pay that All American advanced Davis, it had also advanced him $1000 in commission for unfunded projects and $3000 in draws against other commissions. On August 9, 2006, Davis filed a complaint against All American, claiming that it had failed to pay him commissions to which he was entitled. In his complaint, Davis also contended that the commissions allegedly owed to him were wages for purposes of Indiana Code chapter 22–2–5 and that he was therefore entitled to liquidated damages under Indiana Code section 22–2–5–2. On February 11, 2008, All American filed a motion for summary judgment, which the trial court granted on April 25, 2008.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

Davis contends that the trial court erred in granting summary judgment in favor of All American because genuine issues of material fact exist regarding whether All America owed him commissions on jobs he submitted but that were not funded before his departure and whether those commissions more than offset any training pay and advances he received. Davis also contends that the Indiana Wage Payment Statute applies to those alleged commissions, entitling him to liquidated damages under Indiana Code section 22–2–5–2.

## I. Davis's Commissions

### A. Whether Davis is Entitled to Commissions

Davis contends that he is entitled to be paid the commissions for projects that he initially negotiated before leaving All American but that were completed after he left. "After an employee leaves an employer, bargained-for compensation is still payable when earned in the absence of a clear and unambiguous intent to terminate payments when employment ends." *Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind.2004). "Moreover, absent some other arrangement or policy, when an employer makes an agreement to provide compensation for services, the employee's right to compensation vests when the employee renders the services." *Id.* More specifically, "[a]s a general rule, a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer." *Vector Eng'g and Mfg. Corp. v. Pequet*, 431 N.E.2d 503, 505 (Ind.Ct.App.1982). "The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped." *Id.* (citations omitted). "This general rule may be altered by a written agreement by the parties or by the conduct of the parties which clearly demonstrates a different compensation scheme." *Id.*

All American argues, and the trial court apparently agreed, that the Agreement served as evidence of a clear and unambiguous agreement between it and Davis that no commission payments would be made to him following his termination. (Appellant's App. 100). Specifically, All American argues that the provision allowing it to subtract training pay from commissions owed to Davis operated as an agreement that it would not pay him any commissions after his termination. We cannot agree.

The provision in question reads as follows: "Any termination that occurs during the training period or within 180 (one hundred eighty) days of completion of training, I hereby, authorize All American Siding & Windows to withhold the amount of Training Pay I received from any future draw & commission checks." Appellant's App. p. 100. Quite simply, the plain language of this provision merely dictates that, in the event of premature termination, any commissions will be offset by forfeited training pay, not that *all* commissions will be forfeited. Indeed, if anything, the use of the term "future draw & commission checks" in a section dealing with early termination specifically contemplates that commission payments will be made *after* such a termination. We conclude that the Agreement does not establish a clear and unambiguous intent to terminate Davis's commission payments upon his termination.

The next question, then, is whether the designated evidence contains evidence of conduct by the parties that would demonstrate that intent. We conclude that neither party has designated any such evidence. Indeed, the only designated evidence touching on this question was contained in Davis's affidavit, in which he averred that "I was never informed by any representative of [All American] that my commissions were not earned until the job was completed and payment had been received." Appellant's App. p. 98. In the absence of any designated evidence of an agreement to the contrary, we conclude, as a matter of law, that Davis earned his commissions when he submitted his orders to All American. *See Vector Eng'g and Mfg. Corp.*, 431 N.E.2d at 505. This, however, is not the end of the inquiry.

## B. Calculation of Commissions

■ The following table summarizes the sixteen Davis projects that were ultimately finished.[1] Included are the original nego-tiated contract price, the par job cost and commission calculated by Davis, and, where applicable, the renegotiated con-tract price and/or par job cost and corre-sponding recalculated commission.

| Project Name | Original Contract Price | Original Par Job Cost | Preliminary Commission | Renegotiated Contract Price | Recalculated Par Job Cost | Final Commission (According to All American) | Final Commission (According to Davis) |
|---|---|---|---|---|---|---|---|
| Berger/Turner | $32,000.00 | $23,976.00 | $5215.60 | $15,000.00 | $24,056.00 | none | $1500.00 |
| Bolin | $5972.00 | $5393.00 | $597.20 | same | $5552.00 | $597.20 | $597.20 |
| Calhoun | $16,350.00 | $13,459.00 | $1879.15 | same | same | $1879.15 | $1879.15 |
| Carroll | $12,500.00 | $8497.00 | $2601.95 | same | same | $2601.95 | $2601.95 |
| Confer | $9681.00 | $8878.00 | $968.10 | same | same | $968.10 | $968.10 |
| Daugherty | $18,000.00 | $17,978.00 | $1800.00 | same | $19,339.00 | $594.90 | $1800.00 |
| Gambrell | $13,440.00 | $11,682.00 | $1344.00 | same | same | $1344.00 | $1344.00 |
| Harding | $16,300.00 | $13,848.00 | $1630.00 | $14,264.00 | $18,905.00 | none | $1426.40 |
| Hart | $17,850.00 | $14,515.00 | $2167.75 | $10,000.00 | $14,025.00 | none | $1000.00 |
| Keen | $19,857.00 | $15,373.00 | $2914.60 | $13,006.00 | $17,904.00 | none | $1300.60 |
| Losh | $13,650.00 | $11,857.00 | $1365.00 | same | same | $1365.00 | $1365.00 |
| Oakley | $6686.25 | $6439.25 | $668.63 | $7211.00 | $7362.00 | $585.20 | $721.10 |
| Reeves | $11,000.00 | $8573.00 | $1577.55 | same | same | $1577.55 | $1577.55 |
| Royal | $5860.00 | $5623.00 | $586.00 | same | $5053.00 | $586.00 | $586.00 |
| Tucker | $18,750.00 | $15,223.00 | $2292.55 | $19,250.00 | $16,763.00 | $1925.00 | $1925.00 |
| Vickery | $17,800.00 | $14,230.00 | $2320.50 | same | same | $2320.50 | $2320.50 |

As previously mentioned, Davis initially calculated his commission when he reached an agreement with a customer—a figure based on his negotiated contract price and calculated par job cost. Also as previously mentioned, both the contract price and the par job cost were then subject to revision by All American, which adjusted Davis's commission correspondingly. Davis con-cedes that the renegotiated contract price and par job price could affect his commis-sion, but only to the extent that the rela-tionship between ten percent of the con-tract price and sixty-five percent of the amount of the contract price over the par job value is altered. Davis contends that his ten percent commission, in the event that the final contract price is lower than the par job cost, should not be reduced by the difference between the two amounts.[2] The projects on which the parties disagree on the final commission amount are high-lighted in the right two columns of the table. Included are the Berger/Turner, Daugherty, Harding, Hart, Keen, and Oak-ley projects.

■ Both parties seem to agree that the Agreement governed their employ-ment relationship, as far as it goes. We recognize, however, that a contract of em-ployment, out of which the relationship of employer and employee arises, may be either express or implied, verbal or writ-ten. *Kirmse v. City of Gary*, 114 Ind.

1. Davis negotiated eight more projects that he concedes were rejected or kicked. *See* Appel-lant's Reply Br. p. 8.

2. We will use the Berger/Turner project to illustrate. Davis initially negotiated a con-tract price of $32,000.00 and calculated a par job cost of $23,976.00. Using these figures, Davis's commission would be $5215.60, or sixty-five percent of the amount the contract price exceeded the par job cost. Ultimately, All American renegotiated the contract price to $15,000.00 and recalculated the par job cost to $24,056.00. Davis contends that he is entitled to a $1500.00 commission, or ten percent of the contract price, while All Ameri-can contends that Davis is entitled to no com-mission, because the difference between the par job cost and the contract price, which was $9056.00, exceeded $1500.00.

App. 558, 561, 51 N.E.2d 883, 884 (1944) (citation omitted). One may not, however, unilaterally bind another to a contract of employment; a meeting of the minds is necessary to establish the employment relationship. *Moore v. Review Bd. of Ind. Employment Sec. Division*, 406 N.E.2d 325, 327 (Ind.Ct.App.1980). Mutual assent is a prerequisite to the creation of a contract. *Jackson v. Blanchard*, 601 N.E.2d 411, 416 (Ind.Ct.App.1992). The intention of the parties is a factual matter to be determined by the fact-finder from all of the circumstances. *Continental Grain Co. v. Followell*, 475 N.E.2d 318, 321 (Ind.Ct.App.1985), *trans. denied.*

■■■ The Agreement is just as consistent with Davis's claim as it is with All American's on the question of whether the ten percent commissions were to be reduced by the amount the final par job cost exceeded the final contract price and is therefore ambiguous. "If the language of [an] instrument is unambiguous, the intent of the parties is determined from the four corners of that instrument." *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind.Ct.App.1999). "If, however, a contract is ambiguous or uncertain, its meaning is to be determined by extrinsic evidence and its construction is a matter for the fact finder." *Id.*

Both Davis and All American have designated evidence touching on this question. Davis averred that All American never informed him that his commission would be charged the difference if the renegotiated contract price was lower than the par job cost. For its part, All American designated a "par sheet" completed by Davis for the Berger/Turner project which provided, *inter alia*, that "any job amount less than par will be subtracted from the 10% com-

mission[.]" Appellant's App. p. 74. In short, the parties have designated conflicting evidence regarding whether both parties understood that commissions were to be reduced by the amount that the final contract price fell short of the final par job cost. We therefore remand for trial on the question of whether the parties had a meeting of minds, express or implied, written or verbal, on this point.

In summary, if the fact-finder determines that Davis and All American agreed that Davis's commissions would not be reduced if the final contract price was less than the final par job price, then Davis will receive ten percent of the final contract price as a commission on the Berger/Turner, Daugherty, Harding, Hart, Keen, and Oakley projects. If, on the other hand, the fact-finder determines that Davis and All American agreed that Davis's commissions *would* be reduced if the final contract price was less than the final par job price, Davis's ten percent commissions for those jobs would be reduced or eliminated accordingly.[3]

## II. Whether Davis's Commissions are Wages

■■■ Davis contends that his commissions qualify as wages for purposes of the Indiana Wage Payment Statute, Indiana Code section 22–2–5–1 (2005), which at the time of his employment provided as follows:

(a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful

---

3. We express no opinion as to the result if the fact-finder determines that the parties simply

did not discuss the matter.

money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment. However, this subsection does not prevent payments being made at shorter intervals than specified in this subsection, nor repeal any law providing for payments at shorter intervals. However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer. If an employee leaves employment voluntarily, and without the employee's whereabouts or address being known to the employer, the employer is not subject to section 2 of this chapter until:

(1) ten (10) days have elapsed after the employee has made a demand for the wages due the employee; or

(2) the employee has furnished the employer with the employee's address where the wages may be sent or forwarded.

If Davis's commissions qualify as wages under the Wage Payment Statute, they are subject to Indiana Code section 22–2–5–2 (2005), which provides as follows:

Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him

in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

■■■ The Indiana Code section 22–2–9–1(b) defines "wages" for purposes of the Wage Payment Statute as, "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." The name given to the method of compensation, however, is not controlling. *Gress v. Fabcon, Inc.*, 826 N.E.2d 1, 3 (Ind.Ct.App.2005) (citing *Gurnik v. Lee*, 587 N.E.2d 706, 709 (Ind.Ct.App.1992)). "Rather, we will consider the substance of the compensation to determine whether it is a wage, and therefore subject to the Wage Payment Statute." *Id.* (citing *Gurnik*, 587 N.E.2d at 709).

■■■ "We have recognized that wages are 'something akin to the wages paid on a regular periodic basis for regular work done by the employee....'" *Id.* (citing *Wank v. St. Francis Coll.*, 740 N.E.2d 908, 912 (Ind.Ct.App.2000)). "In other words, if compensation is not linked to the amount of work done by the employee or if the compensation is based on the financial success of the employer, it is not a 'wage.'" *Id.* (citing *Pyle v. Nat'l Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind.Ct.App. 1994)). Moreover, as the Indiana Supreme Court has recognized, because the Wage Payment Statute imposes a penalty when wages are not paid within ten days of the date they are "earned," it is not practical

to apply the statute to payments that cannot be calculated within ten days after being earned. *See Highhouse,* 807 N.E.2d at 740.

Here, Davis's commissions were based, in large part, on All American's financial success in regard to particular projects. Contrary to Davis's contention, his commission was not based solely on the contract price, but, rather, on the relationship between the contract price and the par job cost. The amount that the contract price exceeds the par job cost—which seems to be an objective estimate of All American's costs based on measurements of the building in question—appears to provide a rough measure of a project's profitability. *See Gress,* 826 N.E.2d at 4 (concluding, where "Fabcon's commission program is based upon the profitability of the salesperson's individual projects" and "[t]he salesperson earns no commission if the project does not result in a profit for Fabcon[,]" that Gress's commissions were not wages for purposes of the Wage Payment Statute). Moreover, All American designated uncontradicted evidence that its projects generally took three to eight weeks to proceed to completion after initial agreement with a customer was reached. As Davis essentially acknowledges by conceding that his commissions can be altered by subsequent renegotiation, there seems to be no way that All American could know what he was owed within ten days. *See* Ind.Code § 22–2–5–1(b). Because Davis's commissions were tied to an individual project's financial success, and also because it does not seem possible that they could have been calculated within the statutorily-mandated ten days, we conclude that they are not "wages" for purposes of the Wage Payment Statute. Davis will therefore not be able to collect the liquidated damages provided for by Indiana Code section 22–2–5–2.

## Conclusion

We conclude that Davis is owed commissions that he earned before leaving All American. Davis designated uncontradicted evidence that the Bolin, Calhoun, Carroll, Confer, Gambrell, Losh, Reeves, Royal, Tucker, and Vickery projects were completed and were not renegotiated so as to alter his commission. We remand for trial, however, on the question of whether the parties had a meeting of the minds regarding whether the commissions were to be reduced by the amount that the final contract price fell short of the final par job cost. The answer to this question will determine if commissions are to be paid, or affect the amount of the commissions, on the Berger/Turner, Daugherty, Harding, Hart, Keen, and Oakley projects. The total amount of commissions will be offset by the $5916.70 in training pay and draws on commissions that Davis has already been paid. Finally, we conclude that Davis's commissions are not "wages" for purposes of the Indiana Wage Payment Statute. We reverse the trial court's entry of summary judgment in favor of All American and remand for further proceedings not inconsistent with this decision.

The judgment of the trial court is reversed and remanded with instructions.

RILEY, J., and BAILEY, J., concur.