## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 18 2016, 8:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven P. Taylor
Law Offices of Steven P. Taylor, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Paul L. Jefferson
Jefferson & Brewer, LLC
Indianapolis, Indiana

Jeffrey S. Nickloy
Amy E. Higdon
Nickloy & Higdon
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Hamilton County
Convention Center, LLC,

*Appellant-Cross-Appellee,*

v.

Lee R. Johnson,

*Appellee-Cross-Appellant*

August 18, 2016

Court of Appeals Case No.
29A05-1509-PL-1525

Appeal from the Hamilton
Superior Court

The Honorable Wayne A.
Sturtevant, Judge
Honorable David K. Najjar,
Special Judge

Trial Court Cause No.
29D05-1112-PL-12925

**Baker, Judge.**

[1] Hamilton County Convention Center (HCCC), LLC, appeals the judgment of the trial court, which found that HCCC had illegally failed to pay its employee, Lee Johnson. Johnson cross-appeals the trial court's award of attorney fees. We find that (1) the trial court properly concluded that Johnson was an employee, (2) Johnson's remuneration was a wage, and (3) the award of attorney fees was within the sound discretion of the trial court. Accordingly, we affirm.

# Facts

[2] HCCC operated the "Mill Top" event center in Noblesville. Hassan Shanehsaz was the sole owner of HCCC, as well as the sole owner of Shane, LLC, the entity that owned the Mill Top building. Johnson had worked for decades in the event planning industry, experience that Shanehsaz lacked. In October 2010, Shanehsaz came to an agreement with Johnson: she would solicit customers who were interested in using the event center space, and HCCC would pay her a commission. The terms were set out in a letter written by Johnson to Shanehsaz. Each space in the building had a set commission, and Johnson could earn additional compensation for upsells like linens, chairs, or catering.

[3] Johnson worked around seventy hours per week. HCCC provided her with an office, a desk, a computer, a printer, and a cell phone. Shanehsaz set hours for

Johnson to work, and she performed several tasks in addition to her role of booking new clients: she also cleaned, handled checks, and hired interns.

[4] Johnson would periodically meet with Shanehsaz's son in order to calculate her compensation. Roughly two weeks before leaving the job, Johnson was given a report that showed $10,904.60 owed to her for unpaid commissions. On November 1, 2011, Johnson resigned.

[5] On November 21, 2011, Johnson sent a letter to Shanehsaz's attorney, demanding that he compensate her for her work. She demanded $22,863.79, which consisted of the amount previously mentioned in the report along with other commissions that she believed she had earned. The letter mentioned that if the dispute ended in litigation, Johnson would be proceeding under the Wage Payment Statute,[1] which might entitle her to attorney fees.

[6] On December 11, 2011, Johnson filed a complaint, alleging claims of breach of contract and violation of the Wage Payment Statute. After a July 31, 2013, and November 1, 2013, bench trial, the trial court granted judgment in favor of Johnson on December 17, 2013. The trial court found actual damages of $15,408.60, plus an additional $30,817.20 of liquidated damages under the Wage Payment Statute. The trial court set a hearing regarding Johnson's attorney fees for February 12, 2014.

---

[1] Ind. Code § 22-2-5-1.

One day before this hearing was set to take place, HCCC filed a notice of bankruptcy, and the trial court stayed the attorney fees hearing. When the bankruptcy closed in 2015, the trial court held a hearing and awarded Johnson attorney fees of $25,000. HCCC now appeals the judgment that it violated the Wage Payment Statute, and Johnson cross-appeals the trial court's calculation of attorney fees.

# Discussion and Decision

Our standard of review is the following:

> When a trial court has entered findings of fact and conclusions of law, we engage in a two-tiered standard of review. We must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. We will not reverse the trial court's findings and judgment unless they are clearly erroneous. The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. In making these determinations, we will neither reweigh the evidence nor judge witness credibility, considering only the evidence favorable to the judgment and all reasonable inferences therefrom.

*Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007).

# A. Is Johnson an Employee?

Indiana's Wage Payment Statute applies to "employees." I.C. § 22-2-5-1(a). The trial court found that Johnson was an employee. HCCC argues that Johnson was not an employee, but rather an independent contractor, and that, therefore, the Wage Payment Statute does not apply to her.

The Wage Payment Statute does not define "employee" or "independent contractor," but our Supreme Court has laid out a ten-factor test to distinguish between the two:

1. The extent of control which, by the agreement, the master may exercise over the details of the work;
2. Whether or not the one employed is engaged in a distinct occupation or business;
3. The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
4. The skill required in the particular occupation;
5. Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
6. The length of time for which the person is employed;
7. The method of payment, whether by the time or by the job;
8. Whether or not the work is a part of the regular business of the employer;
9. Whether or not the parties believe they are creating the relation of master and servant; and
10. Whether the principal is or is not in business.

*Moberly v. Day*, 757 N.E.2d 1007, 1010 (Ind. 2001). We are to consider all factors, and no single factor is dispositive. *Id.*

# 1. Extent of Control

HCCC tasked Johnson with many obligations in addition to her booking duties. When a space flooded in the middle of the night, Shanehsaz called Johnson and had her clean it up. She also collected tenants' checks and helped tenants access the buildings when they forgot their key. Johnson typically worked seventy hours per week for HCCC, and she did not work anywhere else. We find that this factor supports the finding of the trial court.

## 2. Distinct Business

Johnson was not engaged in a distinct occupation or business. She was not like a landscaper, who might work on one property but then work on another. Her efforts were aimed entirely at securing clients for HCCC, and she worked at that task full time. We find that this factor supports the finding of the trial court.

## 3. Kind of Occupation

The record does not indicate whether this type of work is typically done under the direction of an employer or by a specialist without supervision. Therefore, this factor neither supports nor contradicts the finding of the trial court.

## 4. Skill Required

Johnson's job does not seem to require any specialized training or skill. In fact, when Johnson left her job at HCCC, it replaced her with a former intern who had little experience in the field. We find that this factor supports the finding of the trial court.

## 5. Who Supplied Instrumentalities

Johnson worked out of an HCCC office, using an HCCC phone, computer, printer, and desk. HCCC concedes that this factor supports the finding of the trial court.

## 6. The Length of Time

Johnson worked for HCCC for an entire year, and worked nowhere else. HCCC concedes that this factor supports the finding of the trial court.

## 7. Method of Payment

Johnson was paid by commission and was not paid a salary. This factor tends to contradict the finding of the trial court.

## 8. Part of HCCC's Regular Business

Johnson provided a necessary part of HCCC's business, and she was the only worker who provided this service. HCCC concedes that this factor supports the finding of the trial court.

## 9. Parties' Beliefs

Johnson testified that she viewed Shanehsaz as her boss. On the other hand, Johnson filled out a tax form in which she listed herself as an independent contractor. We find that this factor neither clearly supports nor contradicts the trial court's finding.

## 10. Principal in Business

HCCC, the principal, was in the event staging business. HCCC concedes that this factor supports the finding of the trial court.

Overall, HCCC concedes that four out of the ten *Moberly* factors support the trial court's finding that Johnson was an employee. Appellant's Br. p. 22.

Although HCCC argues that the remaining six tend to show that Johnson was an independent contractor, we believe that only Johnson's method of payment tends to contradict the trial court's finding; the remaining five are either ambiguous or actually support the trial court's finding.

[22] We will only reverse if HCCC can show that the "judgment is contrary to law [because] the evidence is without conflict and leads to but one conclusion which is opposite from that reached by the trial court." *Mayflower Transit, Inc. v. Davenport*, 714 N.E.2d 794, 798 (Ind. Ct. App. 1999). That is certainly not the case when only one of ten factors cuts against the trial court's finding and the remaining nine strongly support it or are ambiguous.

[23] Finally, HCCC argues that we should reverse the trial court's finding that Johnson was an employee because such a finding does not accord with how HCCC has been filing its taxes.

[24] First, we note that this argument was never presented to the trial court, and is therefore waived. *Mitchell v. Stevenson*, 677 N.E.2d 551, 558 (Ind. Ct. App. 1997). Even if it were not waived, we fail to see this argument's relevance. While we appreciate HCCC's candor in admitting that it has been improperly filing its taxes, we find no legal authority for the proposition that this would affect our *Moberly* analysis.

[25] The trial court's finding, that Johnson was an employee of HCCC, is amply supported by the evidence, and HCCC's tax argument has no bearing on the question before us.

# B. Were the Commissions "Wages"?

[26] The Wage Payment Statute requires that every employer pay its employees "at least semi-monthly or biweekly, if requested, the amount due such employee" and that "[p]ayment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment." I.C. § 22-2-5-1. "Employees, upon separation from employment, must be paid the amount [of wages] due them at their next and usual payday." *Fardy v. Physicians Health Rehab. Servs., Inc.*, 529 N.E.2d 879, 882 (Ind. Ct. App. 1988). Failure to pay subjects the employer to a penalty of up to double the unpaid wages and attorney fees. I.C. § 22-2-5-2.

[27] Although the term "wages" is not statutorily defined for the Wage Payment Statute, it has been defined in the Wage Claims Act, a definition that courts use in both contexts: "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." Ind. Code § 22-2-9-1(b); *Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind. 2004).

[28] The name given to the method of compensation is not controlling. *Gress v. Fabcon, Inc.*, 826 N.E.2d 1, 3 (Ind. Ct. App. 2005). Rather, we will consider the substance of the compensation to determine whether it is a wage and, therefore, subject to the Wage Payment Statute. *Id.* We have recognized that wages are "'something akin to the wages paid on a regular periodic basis for regular work done by the employee . . . .'" *Id.* (quoting *Wank v. St. Francis Coll.*, 740 N.E.2d

908, 912 (Ind. Ct. App. 2000)). In other words, if compensation is not linked to the amount of work done by the employee or if the compensation is based on the financial success of the employer, it is not a "wage." *Id.*

[29] HCCC points to *Davis v. All American Siding & Windows, Inc.*, 897 N.E.2d 936 (Ind. Ct. App. 2008), for support. In that case, a salesperson received a commission, in addition to a base salary, that was based on the final contract price negotiated by his company. *Id.* at 938. The salesperson would negotiate a preliminary deal with clients, but would then direct those clients to the company for final negotiations. *Id.* at 939. The undisputed evidence showed that the process typically lasted three to eight weeks after the salesperson's work had been completed. *Id.* at 944. Because the commission amount could not be calculated within ten days, and because the level commission ultimately depended on work performed by the company rather than the salesperson, we found that these commissions were not "wages" for purposes of the Wage Payment Statute. *Id.*

[30] We find the instant case entirely distinguishable from *Davis*. In the letter sent by Johnson to Shanehsaz, which set out her commission schedule, the parties agreed to specific amounts of remuneration. For example, if Johnson booked a customer to use the Ballroom, the rental value was $2,000 and Johnson would receive 40% of that amount. Appellant's App. p. 46. Similarly specific amounts are set for the Great Room, the Skylight Room, and the Gallery. *Id.* When Johnson successfully booked a customer for these rooms, both she and HCCC knew precisely the amount of remuneration due. The commissions she

earned could be calculated instantly, well within the ten days set out by the statute. Further, the size of the commission did not depend on the work of another person or entity; Johnson was the only employee booking clients, and so her commissions were based on her own labor.

[31] HCCC argues that, because Johnson's original demand letter requested a different amount than what the trial court ultimately awarded, the commissions were inherently incapable of calculation. This argument is unavailing—the trial court disagreed that Johnson earned several of the commissions listed in her demand letter. But whether Johnson did certain work that entitled her to wages is an entirely different inquiry than whether the remuneration was a wage at all. HCCC has provided no authority for the proposition that a discrepancy between the wages initially claimed and the wages eventually awarded requires a reversal, and we decline to adopt such a rule today.

## C. Johnson's Cross-Appeal

[32] Johnson cross-appeals, arguing that the trial court improperly awarded $25,000 in attorney fees after finding that Johnson's $41,725 in claimed fees were unreasonable. The trial court noted that this amount was nearly double the amount of wages Johnson was seeking, which resulted in "concerns as to whether such amount is reasonable." Appellant's App. p. 26. It also questioned several conferences, emails, and conversations that were related to Johnson's refusal to cooperate with document review rather than to proving her

case. Finally, the trial court found that Johnson had not proved that this was a particularly vexing case.

[33] Johnson argues that the trial court's decision is in conflict with our decision in *R.L. Turner v. Wressel*, 44 N.E.3d 26 (Ind. Ct. App. 2015), which was published just after the trial court's order. In that case, we affirmed an award of attorney fees of $99,870 for an unpaid wage claim of $3,852.82. *Id.* at 29-30. Johnson concludes from *Wessel* that, since we have previously affirmed an attorney fee award with such a large disparity, the trial court in this case committed reversible error by deciding that the attorney fees should be decreased based on a smaller disparity.

[34] An award of attorney fees is within the discretion of the trial court. *Id.* at 38. We will reverse only when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We do not reweigh the evidence; rather, we determine whether the evidence before the trial court can serve as a rational basis for its decision. *Id.*

[35] In determining a reasonable amount of attorney fees, consideration should be given to the nature and difficulty of the litigation; the time, skill, and effort involved; the fee customarily charged for similar legal services; the amount involved; the time limitations imposed by the circumstances; and the result achieved in the litigation. *Id.* at 39.

[36] We do not believe that *Wressel* stands for the proposition advanced by Johnson. In that case, we rejected the employer's contention that proportionality alone

could place a cap on the amount of attorney fees. *Id.* We never stated that the amount of wages was irrelevant; instead, we explained that the "recovery is only one consideration which the court may take into account when determining what amount of fees are reasonable." *Id.*

[37] The trial court did not err by awarding $25,000 in attorney fees. The disparity between the wages recovered and the attorney fees was only one factor the trial court relied upon. It also noted that it did not believe several charged items were necessary to advance Johnson's case, and that this case was not exceptionally difficult or complex. To be sure, the trial court would have been within its discretion to award the full $41,725 claimed by Johnson; but this does not mean that any amount lower than this would be error. The trial court found $25,000 to be a reasonable amount of attorney fees, and we will not second guess that determination.

[38] The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.