**VECTOR ENGINEERING AND MANU-FACTURING CORP., Appellant,**

**v.**

**A. David PEQUET [*sic*], Appellee.**

**No. 3–781 A 171.**

Court of Appeals of Indiana,
Third District.

Jan. 28, 1982.

Rehearing Denied March 17, 1982.

Joseph S. Reid, Diana Cross Gonzalez, Hammond, for appellant.

David L. Hollenbeck, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellee.

STATON, Judge.

A. David Peuquet was employed by Vector Engineering and Manufacturing Corporation as a sales manager. Peuquet received a base salary and commissions from sales he made. After Peuquet was terminated, he filed suit alleging that Vector had breached its contract with him by withholding sales commissions due him. At a bench trial, the trial court awarded Peuquet $11,-332.44 plus costs and prejudgment interest at the rate of 8% per annum. The judgment was rendered as a general judgment.

On appeal Vector raises the following issues:

(1) Whether the judgment is contrary to law because the trial court misconstrued the contract?

(2) Whether the judgment of the trial court is contrary to the evidence and against the weight of the evidence?

(3) Whether the judgment of the trial court was prejudicially tainted by the admission of incompetent, irrelevant, and improper evidence?

We affirm.

## I.

### Construction of Contract

The trial court entered a general judgment. The general judgment is presumed to be based upon findings supported by the evidence. If the action of the trial court is sustainable on any legal theory, it must be affirmed. *Ray v. Goldsmith* (1980), Ind.App., 400 N.E.2d 176, 177. This Court will neither weigh conflicting evidence nor resolve questions concerning the credibility of witnesses. This Court may consider only that evidence most favorable to the appellee, Peuquet, together with all the reasonable inferences drawn therefrom. If from that viewpoint there is evidence of probative value to sustain the judgment of the trial court, that judgment will not be disturbed. *Id.*

Vector is a job shop. It designs and produces specialized parts for machinery. When Vector offered Peuquet the position of sales manager, it gave him a letter summarizing the duties of the sales manager and the compensation. It stated the salary and benefits as follows:

"SALARY AND BENEFITS

"Salary   First 4 months 2166 dollars/month with no commissions.
From 4 to 40 months:
Base           1200 dollars/month
1. Plus 2.5% Jobbing Sales up to 125,000 dollars per customer per year.
2. Plus 1.5% Jobbing Sales over 125,000 dollars per customer per year.
3. Plus 1.5% Special Equipment Sales.
4. Plus 1500 dollars is [*sic*] sales increase more than 35% in any one year.
5. Less .5% for accounts paid after 45 days, and less 1% for accounts paid after 75 days."

Peuquet's commissions were computed on the basis of what had been shipped rather than the orders that had been turned in.

On appeal, Vector argues that Peuquet should not receive commissions on orders

taken but not shipped before Peuquet's termination because a sale had not taken place within the meaning of the employment contract. Vector argues that the trial court has misconstrued the contract by allowing Peuquet to receive such commissions. Peuquet argues that he was entitled to commissions on orders he had secured before his termination even though payment was deferred until after shipping.

■ As a general rule, a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer. The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped. *Oken v. National Chain Company* (1981), R.I., 424 A.2d 234, 235, *Marcin v. Darling Valve and Manufacturing Company* (W.D.Pa.1966), 259 F.Supp. 720, 723; *Weick v. Rickenbaugh Cadillac Company* (1956), 134 Col. 283, 303 P.2d 685, 688; *see Richer v. Khoury Brothers, Inc.* (7th Cir. 1965), 341 F.2d 34; *see Diana v. Burnside Motors, Inc.* (1973), 30 Conn.Supp. 561, 304 A.2d 222; *see Kowal v. Sportswear by Revere, Inc.* (1967), 351 Mass. 541, 222 N.E.2d 778; *see Lundeen v. Cozy Cab Manufacturing Company* (1970), 288 Minn. 98, 179 N.W.2d 73; *see Elliott v. Clyde Garfield Oldsmobile-Cadillac, Inc.* (1966), 107 N.H. 363, 222 A.2d 215. This general rule may be altered by a written agreement by the parties or by the conduct of the parties which clearly demonstrates a different compensation scheme. If Vector had desired to deny commissions to Peuquet subsequent to his termination as an employee, Vector could have provided for this contingency in clear and unambiguous language.

## II.

### Sufficient Evidence

■ Vector argues that the evidence before the trial court demonstrates that Peuquet was not entitled to commissions until an order was shipped. Vector argues that the judgment of the trial court is contrary to this evidence.

The record reveals that Peuquet was paid commissions on the goods that had been shipped since his last pay period. If an order had been placed but cancelled, Peuquet did not receive commissions on that order. Vector notes that Peuquet never demanded payment for orders that had not been shipped.

This evidence does not clearly demonstrate that Peuquet was not entitled to his commission when the order was accepted. The trial court could reasonably infer that Peuquet did not demand payment for orders when they were turned in because he knew that payment was delayed until the items had been shipped. The trial court could also reasonably infer that Peuquet never made a claim for commissions on any orders which were subsequently cancelled because the commissions on the orders were vested subject to a condition subsequent. His right to commissions was divested when the orders were cancelled.

Vector argues that Peuquet had other duties to perform besides procuring orders. Vector argues that these administrative duties were just as vital as securing the order. Vector argues that both parties contemplated that the responsibility of following an order through to completion and shipment was a prerequisite to earning a commission on an order. Vector did not specifically state this in the contract which it wrote. The trial court was not bound to interpret the evidence before it as Vector has. The trial court could reasonably infer that Peuquet received his base salary for performing his administrative functions. The judgment of the trial court is supported by sufficient evidence.

## III.

### Admission of Evidence

■ Vector argues that the trial court erred in allowing into evidence Peuquet's opinion as to when he believed he was entitled to commissions on orders. Vector argues that this evidence is prejudicial because the trial court must have used it to determine the intent of the parties. As can

be seen from sections I and II above, the trial court did not have to consider this evidence to reach its judgment. Assuming *arguendo* that the evidence of which Vector complains is inadmissible evidence, it is presumed to have been disregarded by the trial court. *Indiana Tri-City Plaza Bowl, Inc. v. The Estate of Glueck* (1981), Ind.App., 422 N.E.2d 670, 677, *transfer pending*.

Judgment affirmed.

GARRARD, J., and CONOVER, J. (by designation), concur.