**WELLS FARGO INSURANCE, INC.,
Appellant/Counter–Defendant,**

v.

**Bruce A. LAND, Appellee/Counter–
Plaintiff.**

No. 48A02–0911–CV–1099.

Court of Appeals of Indiana.

Aug. 4, 2010.

Elizabeth G. Russell, Indianapolis, IN, Attorney for Appellant.

Thomas B. Blackwell, Indianapolis, IN, Crystal G. Rowe, New Albany, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Senior Judge.

### *STATEMENT OF THE CASE*

Plaintiff–Appellant Wells Fargo Insurance, Inc. appeals the trial court's entry of summary judgment in favor of Defendant–Appellee Bruce A. Land.

We affirm in part and reverse and remand in part.

### *ISSUES*

Due to the nature of the issue, we address first an issue presented by Land:

I.  Whether several arguments presented by Wells Fargo are barred by judicial estoppel.

In appealing the entry of summary judgment, Wells Fargo presents four issues which we consolidate and restate as:

II.  Whether the trial court erred in determining the amount of Land's 2005 crop year commissions.

III. Whether Wells Fargo is entitled to deduct the amount of Land's 2006 draw from his 2005 commissions.

In his cross-appeal, Land presents two issues:

IV. Whether the trial court erred by denying his motion for additional attorney fees.

V. Whether he is entitled to appellate attorney fees.

## FACTS AND PROCEDURAL HISTORY

Land was employed from April 25, 2005 to February 2, 2006 as a sales representative for Wells Fargo selling crop insurance, and Lisa Komestakes was his manager, for at least a portion of that time. Subsequent to his employment with Wells Fargo, Land apparently started his own crop insurance agency. In March 2006, Wells Fargo filed suit against Land alleging that he had violated a covenant not to compete and seeking to permanently enjoin him from contacting its customers. Land counterclaimed with a claim for unpaid wages. The trial court denied Wells Fargo's request for an injunction, and thereafter the parties filed cross-motions for summary judgment with regard to Land's wage claim. Following a hearing, the trial court entered summary judgment on behalf of Land in the amount of $81,619.35, representing commissions and penalties, pursuant to Ind.Code § 22–2–5–2, and $23,312.67 in attorney fees.

Wells Fargo subsequently filed a motion to correct error. Land filed a response to Wells Fargo's motion and requested additional attorney fees. Following a hearing, the trial court denied Wells Fargo's motion to correct error as well as Land's request for additional attorney fees. Wells Fargo then filed a motion to vacate or set aside the judgment, which the trial court also denied. Wells Fargo now appeals, and Land cross appeals.

## DISCUSSION AND DECISION

### I. JUDICIAL ESTOPPEL

We first address Land's argument that several of Wells Fargo's arguments are barred by judicial estoppel. Land maintains that Wells Fargo is judicially estopped from claiming that (1) Land's commissions were not earned until the date that the farmers paid their premiums; (2) Land is not entitled to receive any commissions derived from premiums paid between January 1, 2006 and March 15, 2006; (3) Wells Fargo does not owe Land any compensatory or liquidated damages; and (4) the trial court erred by finding that Land is entitled to commissions in the sum of $27,206.44, less deductions, if any.

Judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *Plaza Group Properties, LLC v. Spencer County Plan Com'n*, 911 N.E.2d 1264, 1269 (Ind.Ct.App.2009), *reh'g denied, trans. denied* (2010). "While a party may properly plead alternative and contradictory theories, he may not repudiate by contrary assertions that which he has averred in his pleadings to be true." *Marquez v. Mayer*, 727 N.E.2d 768, 773 (Ind. Ct.App.2000), *trans. denied.*

As to the first claim of judicial estoppel, Land asserts that Wells Fargo had previously argued that Land's commissions were earned when farmers signed the insurance application to apply for crop insurance and that, on appeal, Wells Fargo is now claiming that Land's commissions were not earned until the date that Wells Fargo received its commission from the insurance carrier after the carrier was paid the premium due from the farmer. Our review of the materials submitted on appeal reveals that, both in its response to

Land's motion for summary judgment and in its argument to the trial court at the summary judgment hearing, Wells Fargo maintained that Land's commissions were not earned until the date that Wells Fargo received its commission from the insurance carrier. *See* Appellant's Appendix at 83, Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support of Plaintiff's Cross–Motion for Summary Judgment, and Tr. at 25. Therefore, the doctrine of judicial estoppel does not apply to this issue.

■ Secondly, Land argues that Wells Fargo is judicially estopped from arguing that he is not entitled to receive any commissions derived from premiums paid between January 1, 2006 and March 15, 2006. On this issue, Wells Fargo presented alternative arguments. Wells Fargo first and foremost urged the trial court to find that Land is owed nothing more. In the alternative, Wells Fargo advocated different outcomes to the court based upon different interpretations of its Agribusiness Commission Plan, which it argued applied to Land's employment with Wells Fargo. In one or more of these scenarios, Wells Fargo was to pay commission to Land for premiums paid during this time period. Providing the court with alternative outcomes does not necessarily amount to declaring a position contrary to one already asserted. Judicial estoppel does not apply in these circumstances.

■ With regard to any argument by Wells Fargo that it does not owe Land any compensatory or liquidated damages and that the trial court erred by finding that Land is entitled to commissions in the sum of $27,206.44, less deductions, we determine that judicial estoppel is not applicable. As we stated previously, Wells Fargo maintained that it owed nothing to Land. However, in the event the trial court did not come to the same conclusion, Wells

Fargo offered alternatives to the court. Moreover, it did so in post-summary judgment motions to the court, at times utilizing the court's findings of commissions owed or damages in order to explain to the court the error in its determination. This does not amount to the assertion of a position inconsistent with one previously asserted. Land's judicial estoppel argument fails.

We now turn to the entry of summary judgment in favor of Land. On appeal from a grant or denial of summary judgment, our standard of review is identical to that of the trial court: whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Winchell v. Guy,* 857 N.E.2d 1024, 1026 (Ind.Ct.App.2006); *see also* Ind. Trial Rule 56(C). Appellate review of a summary judgment motion is limited to those materials designated to the trial court. *Pond v. McNellis,* 845 N.E.2d 1043, 1053 (Ind.Ct.App.2006), *trans. denied.* All facts and reasonable inferences drawn therefrom are construed in favor of the non-movant. *Id.* Further, we carefully review a summary judgment determination to ensure that a party was not improperly denied its day in court. *Id.* Moreover, the fact that the parties made cross-motions for summary judgment does not alter our standard of review; rather, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* The party appealing the judgment carries the burden of persuading this court that the trial court's decision was erroneous. *Wells v. Auto Owners Ins. Co.,* 864 N.E.2d 356, 358 (Ind.Ct.App.2007).

## II. 2005 COMMISSIONS

■ In general, Wells Fargo alleges that the trial court erred by denying its motion for summary judgment and by

granting Land's motion for summary judgment. Specifically, Wells Fargo contends that the trial court erred in computing Land's 2005 crop year commissions.

Land asserts that he is entitled to be paid commission on all the policies of crop insurance he sold for the 2005 crop year regardless of when the premiums were paid. Wells Fargo counters that it should only have to pay Land for the policies whose premiums were paid before January 1, 2006. In the alternative, Wells Fargo argues that it should only pay Land his commission upon those policies whose premiums were paid on or before Land's resignation date of February 2, 2006.

As a general rule, a person employed on a commission basis is entitled to his commission on business he has secured even though payment is not received by the employer until a later date. *Davis v. All American Siding & Windows, Inc.*, 897 N.E.2d 936, 940 (Ind.Ct.App.2008), *reh'g denied, trans. denied*, 915 N.E.2d 989 (2009); *see also Vector Engineering & Mfg. Corp. v. Pequet*, 431 N.E.2d 503, 505 (Ind.Ct.App.1982). This general rule may be altered by a written agreement or by the conduct of the parties which clearly demonstrates a different compensation scheme. *Id.*

Here, Wells Fargo argues that its Agribusiness Insurance Commission Plan is the exception to the general rule regarding an employee's entitlement to commissions. The designated evidence demonstrates that Wells Fargo had in place, since January 1, 2003, a written policy known as the Agribusiness Insurance Commission Plan ("Plan") which it used, in part, to determine commissions for its employees. Appellant's App. at 92, Affidavit of Komestakes ¶ 8; and Appellant's App. at 167–71, Exhibit 5 to Deposition of Komestakes. However, materials submitted to the trial court by Land establish that Land was never informed of the Plan and never agreed to its use in determining his commissions. Land filed with the trial court his reply to Wells Fargo's response to his motion for summary judgment/brief in opposition to Wells Fargo's cross-motion for summary judgment. Contained within this reply are excerpts from Komestakes' deposition not previously provided in the designated materials that support Land's claims regarding the Plan. In particular, Komestakes testified that she had no knowledge of the Plan being provided to Land and that neither she nor her manager ever provided Land with a copy of the Plan. Appellant's App. at 179 and 182, Deposition of Komestakes.

In addition, with his reply to the trial court, Land submitted his second affidavit. In his second affidavit, Land affirmed that he was never provided with a copy of the Plan and that he first heard about the Plan during Komestakes' deposition **after** he had resigned his position with Wells Fargo. Appellant's App. at 189, Second Affidavit of Land ¶ 3. Land further affirmed that he never agreed to the terms of the Plan and that he never signed a copy of the Plan. Appellant's App. at 190, Second Affidavit of Land ¶ 4.

We pause to note that although the excerpts of Komestakes' deposition and Land's second affidavit were not formally designated to the trial court, they were included in materials submitted to the trial court by Land in support of Land's motion for summary judgment and in opposition to Wells Fargo's cross-motion for summary judgment and may be considered by this Court. "As long as the trial court is apprised of the specific material upon which the parties rely in support of or in opposition to a motion for summary judgment, then the material may be considered." *Hamilton v. Prewett*, 860 N.E.2d 1234, 1241 (Ind.Ct.App.2007),

*trans. denied* (holding that, where party's designation merely listed depositions which were not attached to the designation, even broad references within the party's motion may be specific enough for summary judgment designation as long as the trial court is advised of the specific material upon which the party relies). Furthermore, any objection Wells Fargo may have to our consideration of this material is waived because Wells Fargo did not raise an objection to this material at the trial level. *See Timberlake, Inc. v. O'Brien,* 902 N.E.2d 843, 849 (Ind.Ct.App. 2009) (holding that, even in summary judgment proceedings, a party may not raise an issue on appeal that was not raised in trial court).

The unrefuted evidence of both parties shows that Land was not aware of, did not agree to, and did not sign the Plan which would effectively limit his earnings. Thus, the Plan does not apply to Land and the commissions he earned while employed by Wells Fargo, and any determination of Land's commissions cannot be based upon the terms of the Plan.

There being no agreement or conduct of the parties to the contrary, the general rule applies regarding Land's commissions. Therefore, Land is entitled to commission on all of his 2005 crop year policies. No one disputes that Land did all the work required of him as a Wells Fargo crop insurance agent to earn the commissions. By February 2, 2006, the date of Land's resignation, the sales had been consummated, and his right to the 2005 crop year commissions had fully accrued, subject only to receipt of the premium payments. *See Sample v. Kinser Ins. Agency, Inc.,* 700 N.E.2d 802, 804 (Ind.Ct.App. 1998) (holding that former employee of insurance agency was entitled to commissions on business she secured before termination of her employment where she had completed all work required of her and her right to commissions was subject only to receipt of premium payments).

Having determined that the general rule regarding commissions applies in this case, we turn to the evidence regarding the amount of Land's commissions for the 2005 crop year. The parties' designated evidence establishes that for the 2005 crop year, Land earned commissions in the amount of $56,479.20 for premiums paid to Wells Fargo prior to January 1, 2006. Appellant's App. at 161–65, Exhibit 4 to Deposition of Komestakes. The designated materials also show that Land earned an additional $10,639.12 in 2005 crop year commissions, for a total of $67,118.32. Appellant's App. at 205 and 228–29, Second Affidavit of Komestakes ¶ 12 and Exhibit B thereto. Because the Plan does not apply to Land, he was entitled to all of his commissions from the 2005 crop year without restriction as to when the premiums were paid or when he resigned. Thus far, the balance sheet appears as follows:

| | |
|---|---|
| $56,479.20 | 2005 commissions paid to agency prior to January 1, 2006 |
| + $10,639.12 | 2005 commissions paid to agency between January 1, 2006 and March 25, 2006 |
| = $67,118.32 | 2005 commissions |

In addition, the parties agree that Land's 2005 draw totaled $35,217.94. Appellant's App. at 165, Exhibit 4 to Deposition of Komestakes.

| | |
|---|---|
| $67,118.32 | 2005 commissions |
| − $35,217.94 | 2005 draw |
| = $31,900.38 | Balance of 2005 commissions owed to Land |

Wells Fargo further claims that the trial court erred by not deducting the compensation paid to Land by JS Crop Insurance ("JS Crop") in 2005 from the total 2005 commissions Land was owed from Wells Fargo.

Evidence designated by the parties establishes that Land sold crop insurance for JS Crop from December 2001 until April 25, 2005, at which time Land began selling crop insurance for Wells Fargo. Appellant's App. at 53, Affidavit of Land ¶ 2. Also on April 25, 2005, JS Crop sold most of its assets (i.e., crop insurance policies) to Wells Fargo.

Crop insurance must be written by March 15 of each year, but the premium is not billed to the producer (i.e., farmer) until October. Appellant's App. at 91, Affidavit of Komestakes ¶ 4; and Appellant's App. at 205, Second Affidavit of Komestakes ¶ 8. The producer pays his premium to the insurance carrier, and the carrier then pays a commission to the insurance agency. Commissions are paid to the agency of record at the time of payment. Appellant's App. at 91, Affidavit of Komestakes ¶ 5. Thus, because the sale of JS Crop's assets took place on April 25, 2005, Wells Fargo was buying crop insurance policies from JS Crop that had been sold by JS Crop between January 1, 2005 and March 15, 2005 but upon which JS Crop had not yet received all of the commission payments from the insurance carriers. As part of the sale of assets to Wells Fargo, JS Crop received the value of these commission payments. Appellant's App. at 91, Affidavit of Komestakes ¶¶ 3, 4 and 5.

More particularly with regard to Land, the compensation scheme was similar at the two places of employment. He received compensation throughout the year, and, at the end of the year, the amount of commission he earned on policies he sold was reconciled with the amount he had been compensated throughout the year. Appellant's App. at 54, Affidavit of Land ¶ 6; and Appellant's App. at 109–10, Deposition of Land. In addition, Land testified that at the time he began working for Wells Fargo, the crop insurance had already been written, and he was in the process of servicing the customers. When Land changed employers, he continued to service the same customers that he had serviced when he was with JS Crop, in addition to being given new customers. Appellant's App. at 112, Deposition of Land.

Wells Fargo, and ultimately Land, received commission on policies Land sold between January 1, 2005 and April 25, 2005, while he was employed with JS Crop. It follows, then, that the amount of compensation paid to Land from January 1, 2005 to April 25, 2005 would be deducted from his commissions just as it would have been had he continued in the employ of JS Crop. Stated another way, Wells Fargo paid JS Crop a certain value for the anticipated commissions; therefore, it should be credited with the compensation JS Crop paid its sales representatives as an advance against those same commissions. To allow Land to receive $10,515.75 in compensation from JS Crop between January 1, 2005 and April 25, 2005 and not reconcile that amount against the commission he ultimately received at the end of the year from Wells Fargo would be a windfall to Land. The amount Land received from JS Crop was an advance against his commissions for his 2005 crop insurance sales. Thus, the trial court erred by not deducting that amount from Land's 2005 commissions.

Thus, the balance sheet continues as follows:

| | |
|---|---|
| $31,900.38 | Balance of 2005 commissions owed to Land |
| − $10,515.75 | 2005 compensation from JS Crop |
| = $21,384.63 | New balance of 2005 commissions owed to Land |

### III. 2006 DRAW

■ Wells Fargo asserts that it is entitled to a set-off of Land's 2006 draw. Land was paid a total of $6,049.29 in draws

between January 1, 2006 and February 2, 2006, when he resigned his position at Wells Fargo. It is this amount that Wells Fargo is requesting to be set-off from Land's 2005 commissions.

In keeping with our standard of review on appeal, we turn to the designated evidence of the parties. Although Land states that he performed substantial work for Wells Fargo prior to his resignation in 2006, Land's employment agreement with Wells Fargo states that Land's position was a full commission position such that 100% of his pay was derived from his sales, part of which may be paid in the form of a draw. Appellant's App. at 55, Affidavit of Land ¶ 14; and Appellant's App. at 116, Employment Agreement. Further, Komestakes averred that Land sold no insurance in 2006 on behalf of Wells Fargo and that Wells Fargo computes each salesperson's reconciliation on an annual basis to determine whether additional commissions are owed in excess of draws paid. Appellant's App. at 92–93, Affidavit of Komestakes ¶¶ 14 and 7. During his deposition, Land indicated his understanding of this practice. Appellant's App. at 109.

Thus, the designated evidence reveals no genuine issue of material fact with regard to Land's 2006 draw. He was paid on commission only and any draw that he was paid was later reconciled against his commissions. He left his employment at Wells Fargo on February 2, 2006 without selling any insurance for 2006 and, therefore, without receiving any commissions for 2006. Allowing Land to keep the $6,049.29 paid him in draw in 2006 would be to grant him a windfall to which he is not entitled. This amount should be set off against the commissions he is owed. Consequently, the balance sheet is adjusted as follows:

| $21,384.63 | Balance of 2005 commissions owed to Land |
| − $ 6,049.29 | 2006 draw |
| = $15,335.34 | Balance of commissions owed to Land |

Finally, the parties agree and the designated evidence establishes that on March 16, 2006, Wells Fargo paid Land $10,745.51 in commissions. Appellant's App. at 55, Affidavit of Land ¶ 17; Appellant's App. at 98, Exhibit A to Affidavit of Komestakes. Thus, we reduce the balance owed to Land by this amount:

| $15,335.34 | Balance of commissions owed to Land |
| − $10,745.51 | Amount paid to Land by Wells Fargo |
| $ 4,589.83 | Balance owed to Land by Wells Fargo |

Moreover, Wells Fargo does not contest the trial court's application of Ind.Code §§ 22–2–5–1 and –2, Indiana's wage payment statutes, to this case. Therefore, applying the statutory penalty provided for in Ind.Code § 22–2–5–2, we assess the penalty of $9,179.66, for a total of commissions and penalties due to Land of $13,769.49.

Therefore, we conclude the trial court properly entered summary judgment in favor of Land. However, we reverse the trial court's entry of judgment in the amount of $27,206.48 in commissions and $54,412.96 in penalties for a total of $81,619.44, and order the entry of judgment for Land in the amount of $4,589.83 in unpaid commissions and $9,179.66 as the statutory penalty pursuant to Ind.Code § 22–2–5–2, for a total of $13,769.49.

## IV. TRIAL ATTORNEY FEES

In his cross-appeal, Land claims that the trial court erred in denying his request for additional attorney fees pursuant to Ind.Code § 22–2–5–2.

■ Ind.Code § 22–2–5–2 provides, in pertinent part:

> [T]he court *shall* tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

(Emphasis supplied). Therefore, under the plain language of the statute, an award of attorney fees is mandatory. *See* Ind. Code § 22–2–5–2; *Prime Mortg. USA, Inc. v. Nichols,* 885 N.E.2d 628, 661 (Ind. Ct.App.2008).

In the present case, following the entry of judgment and award of attorney fees, the CCS shows that Land's counsel responded to Wells Fargo's motion to correct error and attended a hearing on such motion on behalf of Land, as well as filing a motion for proceedings supplemental. Pursuant to Ind.Code § 22–2–5–2, Land is entitled to a reasonable amount for attorney fees attributable to his recovery of unpaid wages. Therefore, we remand to the trial court with instruction to conduct a hearing to determine the amount and reasonableness of additional attorney fees on behalf of Land.

## V. APPELLATE ATTORNEY FEES

■ The final issue in Land's cross-appeal is his request for appellate attorney fees. Although Ind.Code § 22–2–5–2 does not expressly address appellate attorney fees, our Supreme Court has held that appellate attorney fees are included under Ind.Code § 22–2–5–2. *See St. Vincent Hosp. and Health Care Center, Inc. v. Steele,* 766 N.E.2d 699, 705–06 (Ind.2002). Accordingly, on remand, the trial court is instructed to also conduct a hearing to determine the amount and reasonableness of appellate attorney fees in this case.

### CONCLUSION

Based upon the foregoing discussion and authorities, we conclude that the trial court properly entered summary judgment

on behalf of Land. However, we further conclude that the unrefuted designated evidence reveals an amount of commissions owed to Land different from that ordered by the trial court. Finally, we conclude that Land is entitled to additional reasonable attorney fees, as well as reasonable appellate attorney fees.

Accordingly, we affirm in part and reverse and remand in part with instructions to the trial court to enter summary judgment for Land in the amount of $4,589.83 for unpaid commissions and $9,179.66 as the statutory penalty pursuant to Ind.Code § 22–2–5–2 for a total of $13,769.49 for commissions and penalties and to conduct a hearing to determine the amount and reasonableness of additional attorney fees and appellate attorney fees on behalf of Land.

MAY, J., and BRADFORD, J., concur.