# FOR PUBLICATION



FILED

Apr 07 2014, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ANDREW M. MCNEIL**
**JONATHAN L. MAYES**
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS B. BLACKWELL**
Hopper Blackwell, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

SHEAFF BROCK INVESTMENT ADVISORS, LLC, )
)
    Appellant-Defendant, )
)
        vs. )    No. 29A02-1306-CC-553
)
DAVID MORTON, )
)
    Appellee-Plaintiff. )

## APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
Cause No. 29D01-1203-CC-2302

## April 7, 2014

## OPINION - FOR PUBLICATION

**NAJAM, Judge**

## STATEMENT OF THE CASE

Sheaff Brock Investment Advisors, LLC ("Sheaff Brock") appeals the trial court's grant of summary judgment in favor of David Morton on Morton's claims that Sheaff Brock breached its employment agreement with Morton and violated Indiana's Wage Claims Act. Sheaff Brock presents two issues for our review:

1. Whether the trial court erred when it concluded that Sheaff Brock breached its contract with Morton.

2. Whether the trial court erred when it concluded that Morton's additional compensation under the employment agreement constitutes a wage under the Wage Claims Act.

Morton cross-appeals and presents two issues for our review:

1. Whether the trial court erred when it entered summary judgment in favor of Sheaff Brock on Morton's constructive fraud claim.

2. Whether Morton is entitled to appellate attorney's fees.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

On March 1, 2010, Morton began his employment with Sheaff Brock as an investment advisor representative. Morton's duties included providing prospective clients with information about Sheaff Brock's investment styles and strategies. If a prospective client elected to open an account with Sheaff Brock, the client signed an investment advisory agreement ("investment agreement"). At that point, Morton had fulfilled his duties as an investment advisor representative, and other Sheaff Brock employees assumed responsibility for servicing the client's needs.

---

[1] We held oral argument on March 17, 2014.

Most of Sheaff Brock's clients were referred by TD Ameritrade, which assessed an annual investment management fee against client account balances on a quarterly basis. TD Ameritrade, on behalf of Sheaff Brock, assessed the management fees at the start of each quarter. Clients who opened new accounts during a quarter were assessed a management fee for the pro-rated number of days remaining in the quarter, and clients who left during a quarter received a credit against the management fee for the pro-rated number of days remaining in the quarter. Because assessments were subject to proration, Sheaff Brock did not finally settle each client's account and determine the management fees due on account balances until the end of each quarter.

Morton was an at-will employee, but he also had an employment agreement with Sheaff Brock that provided in relevant part as follows:

> 3.      <u>Changes in Terms and Conditions of Employment</u>. The terms and conditions of your employment may be amended from time to time, as the needs of the Employer may require. . . .
>
> 4.      <u>Amount and Payment of Compensation</u>. During the term of this agreement, Employer shall pay the following:
>
> •      An annual guaranteed draw of thirty thousand dollars ($30,000.00), paid in accordance with the Employer's normal payroll policies and procedures.
>
> •      Additional compensation will be paid as follows:
>
> 50% of the net management fees paid to Employer during the first year of Employer providing investment management services to a client <u>as a direct and proximate result of your marketing efforts</u> which result in the client entering into an investment advisory agreement with the Employer.
>
> 20% of the net management fees paid to Employer thereafter from the continuing retention of Employer to provide investment management services to a client <u>as a direct and proximate result of your marketing efforts</u> with the client.

3

The above fee arrangement will also be subject to a pro rata adjustment for any increase or decrease in management fees as a result of capital addition, capital withdrawal, management termination, management fee discount or any other management fee adjustments and deductions.

Appellant's App. at 23-24 (emphases added).

In approximately March 2011, the owners of Sheaff Brock, Ronald Brock and David Gilreath, told Morton that they were going to restructure his additional compensation. Instead of 50% of the net management fees paid during the first year and 20% of the net management fees paid thereafter, Sheaff Brock would pay Morton 30% during a client's first year and 10% thereafter. The new percentages were to be applied both to existing and new client accounts. To help Morton through the transition, Sheaff Brock temporarily increased Morton's guaranteed draw to $250,000 per year. In November 2011, Sheaff Brock announced that, effective January 1, 2012, Morton and the other investment advisor representatives would each be assigned a territory constituting one-third of the country. And Sheaff Brock told Morton that he would receive 50% of the net management fees obtained from his assigned territory during a client's first year and 20% thereafter.

In early 2012, Sheaff Brock learned that Morton had concerns about the company's financial health and was looking to start a new business himself. Accordingly, Sheaff Brock terminated Morton's employment. On March 7, Morton filed a complaint against Sheaff Brock alleging breach of contract, unpaid wages, and constructive fraud. Morton also sought declaratory judgment on the issue of whether the non-compete and non-solicitation clauses in his contract with Sheaff Brock were valid. Sheaff Brock filed an answer and counterclaim alleging breach of contract and breach of

4

fiduciary duty. On November 5, Sheaff Brock moved for summary judgment, and Morton filed a cross-motion for summary judgment.

Following a hearing on all pending motions on March 11, 2013, the trial court granted in part and denied in part Sheaff Brock's summary judgment motion and granted in part and denied in part Morton's cross-motion for summary judgment. In particular, the trial court concluded that Sheaff Brock did not breach its contract with Morton when it prospectively changed the compensation structure for Morton's additional compensation. But the trial court concluded that Sheaff Brock breached the contract when it applied those changes to client accounts already under management at the time the new compensation structure was implemented. The trial court also concluded that Morton's additional compensation constitutes a wage under the Wage Claims Act; that Morton's constructive fraud claim is without merit; and that neither party is entitled to summary judgment on the issue of whether the non-compete and non-solicitation clauses are invalid. This appeal and cross-appeal ensued.[2]

## DISCUSSION AND DECISION

### Standard of Review

Our standard of review for summary judgment appeals is well established:

When reviewing a grant [or denial] of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the

---

[2] The judgment is a final judgment under Trial Rule 56(C).

> burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark Cnty. Superior Ct. No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where, as here, the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. See Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004). The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Reed v. Reid, 980 N.E.2d 277, 285 (Ind. 2012).

**Issue One: Breach of Contract**

Sheaff Brock first contends that the trial court erred when it concluded that it breached its contract with Morton when, in 2011, it changed the additional compensation structure and applied the changes to existing client accounts going forward. Sheaff Brock maintains that Morton did not have a vested interest in the additional compensation once each quarter ended and had not secured any future business for Sheaff Brock as a result of his work in signing clients. Thus, Sheaff Brock claims that Morton "did not possess a right to future additional compensation at a specific rate, so when Sheaff Brock restructured Morton's pay at the start of a quarter (that is, before Morton earned

6

anything), it did not retroactively change Morton's compensation."  Appellant's Brief at 22.

The trial court found in relevant part that

> the employment was "at will" and the Agreement reserved the right of the Employer to prospectively amend or change the compensation structure under the Agreement as needed.  The ability to amend or change the compensation structure only applied prospectively to new accounts and did not apply to accounts that were already under management.

Appellant's App. at 10.

Sheaff Brock points out that, "as a general rule, a person employed on a commission basis is entitled to his commission on business he has secured even though payment is not received by the employer until a later date."  See Wells Fargo Ins., Inc. v. Land, 932 N.E.2d 195, 200 (Ind. Ct. App. 2010).  But here, Sheaff Brock maintains, Morton's work did not secure anything.[3]  As Sheaff Brock explains it:

> Morton's additional compensation is unlike a specific purchase (e.g. crop insurance) or the typical sale in which specific services are provided (e.g. orthopedic surgery).  When Morton signed up a new Sheaff Brock client after Brock and Gilreath provided him with the opportunity to make the sales presentation, the client signed an investment advisory agreement.  The client agreement yielded nothing more than an expectancy interest in any earnings that may be attributed to that client.  In other words, even if the client signed an investment advisory agreement with Sheaff Brock, nothing obligated the client to stay with Sheaff Brock for any period of time or guaranteed any amount of compensation to Sheaff Brock.  The client was free to leave the following day at no cost to the client.
>
> The simple fact is that Morton's right to Additional Compensation accrued in the same fashion as Sheaff Brock's right to fees accrued.  Although TD Ameritrade assessed fees at the beginning of each quarter and issued quarterly payment to Sheaff Brock for the upcoming quarter, Sheaff Brock recorded the entire payment as a liability on its books because the

---

[3] Morton contends that Sheaff Brock did not make this argument to the trial court and the issue is waived.  But Sheaff Brock directs us to its Reply in Support of its Motion for Summary Judgment, where it made the same argument to the trial court.  Accordingly, Morton's contention is without merit.

fees had not yet been earned. As each day concluded, Sheaff Brock (and therefore Morton) earned 1/90th of the fees for that client at that point (rounding the number of days in a quarter down to 90). However, the fees, and Morton's accrued Additional Compensation, were not fully earned, or vested, until the conclusion of each quarter because there could be reason for other adjustments. <u>Once the quarter ended, the fees were fully earned by Sheaff Brock, and Morton's right to Additional Compensation fully vested for the prior quarter. So, Sheaff Brock could not, on the last day of the quarter, retroactively reduce the percentage payable to Morton; it could, however, implement that change for the new quarter going forward.</u>

Appellant's Brief at 24-25 (emphases added, citations omitted). And Sheaff Brock points out that, under paragraph 3 of the employment agreement, it was entitled to amend Morton's compensation "from time to time" as Sheaff Brock's "needs . . . may require." Appellant's App. at 23.

But Morton maintains that his right to the additional compensation at the contracted-for percentage vested once a client signed an investment agreement with Sheaff Brock. Morton contends that "[o]nce he had fully performed under the agreement it was a breach of the agreement for Sheaff Brock to refuse to pay him <u>according to the terms in place at the time he performed his labor</u>." Appellee's Brief at 31 (emphasis added). In support of that contention, Morton relies on our supreme court's opinion in <u>Highhouse v. Midwest Orthopedic Institute, P.C.</u>, 807 N.E.2d 737 (Ind. 2004), and on this court's opinions in <u>Wells Fargo</u>, 932 N.E.2d at 195, and <u>Vector Engineering & Manufacturing Corp. v. Pequet</u>, 431 N.E.2d 503 (Ind. Ct. App. 1982). In <u>Highhouse</u>, our supreme court stated that, absent some other arrangement or policy, when an employer makes an agreement to provide compensation for services the employee's right to compensation vests when the employee renders the services. 807 N.E.2d at 739. And in <u>Wells Fargo</u> and <u>Pequet</u>, this court observed that, as a general rule, a person employed on

8

a commission basis is entitled to his commission on business he has secured even though payment is not received by the employer until a later date. 932 N.E.2d at 200; 431 N.E.2d at 505. This general rule may be altered by a written agreement or by the conduct of the parties that clearly demonstrates a different compensation scheme. Id.

Here, nothing in the parties' agreement altered the general rule. See id. The agreement provided that Morton would be paid a certain percentage of net management fees after a client entered into an investment agreement with Sheaff Brock. Thus, Sheaff Brock did not have discretion to change the fee percentages owed to Morton on a client's account after that client had signed an investment agreement. Likewise, there is no designated evidence that the parties' conduct demonstrated a different compensation scheme. See id. We hold that Morton had secured business for Sheaff Brock, and Morton's interest in the additional compensation vested, when the client signed an investment agreement and that Morton was entitled to additional compensation based on the fee percentages in effect at that time. The trial court did not err when it entered summary judgment in favor of Morton on his breach of contract claim with regard to those clients already under management.

### Issue Two: Wage Claims Act

Sheaff Brock also contends that the trial court erred when it concluded that Morton's additional compensation constitutes a "wage" under the Wage Claims Act ("the Act"). Indiana Code Section 22-2-9-1(b) provides that the term "wages" under the Act means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other

9

method of calculating such amount. In his complaint, Morton alleged that Sheaff Brock violated the Act, which provides in relevant part that, whenever any employer separates any employee from the payroll, the unpaid wages or compensation of such employee shall become due and payable at the regular pay day for the pay period in which separation occurred. See Ind. Code § 22-2-9-2. Morton contends that Sheaff Brock owes him unpaid additional compensation under the terms of his employment agreement. Failure to make payment subjects the employer to liquidated damages of up to double the amount of wages due and attorney's fees. I.C. §§ 22-2-5-2, -9-4(b).

The trial court found that Morton's additional compensation is a wage and concluded in relevant part as follows:

> n. That the Additional Compensation was earned based upon work performed by the Plaintiff and was not produced as part of a team effort. Such team effort only came after the account had been secured and the Plaintiff's sale efforts were completed.
>
> o. That the Additional Compensation based on the unambiguous language of the Agreement was mandatory and not discretionary and was not based on the financial success of the Defendant.
>
> p. That as to the payment being calculated or being paid within ten days, the Defendant would bill the clients at the beginning of each quarter. However, such amount would remain a liability until the end of the quarter when the fee was earned. Such fees were not earned until the end of the quarter for the reason that the Plaintiff could not collect payments until the end of the quarter or at termination. The Defendant has testified that the percentage owed to the Plaintiff was calculated using a set formula at the end of the quarter when the fee is a "sum certain." Therefore, the Court finds that the designated evidence before the Court is that the amount is calculated to a "sum certain" at the end of the quarter when the fee was earned. Therefore, the Court finds that the Additional Compensation is a "wage" because it is capable of being calculated and paid within ten days of the end of the quarter.

Appellant's App. at 11-12.

10

The name given to the method of compensation is not controlling. Gress v. Fabcon, Inc., 826 N.E.2d 1, 3 (Ind. Ct. App. 2005). Rather, we will consider the substance of the compensation to determine whether it is a wage. Id. We have recognized that wages are something akin to the wages paid on a regular periodic basis for regular work done by the employee. Id. In other words, if compensation is not linked to the amount of work done by the employee or if the compensation is based on the financial success of the employer, it is not a "wage." Id.

In Highhouse, our supreme court observed that a bonus is a "wage" under the Act if it is not linked to a contingency such as the financial success of the company. 807 N.E.2d at 740. Also, to qualify as a wage, the compensation must be connected to the work performed by the employee. Wank v. St. Francis College, 740 N.E.2d 908, 912 (Ind. Ct. App. 2000), trans. denied. Other factors for determining whether compensation is a wage are whether it can be calculated and paid within ten days of having been "earned" and whether it is paid with regularity. See Highhouse, 807 N.E.2d at 740. This court has also held that, where compensation is mandatory rather than discretionary, it is a wage. See, e.g., Quezare v. Byrider Finance, Inc., 941 N.E.2d 510, 514 (Ind. Ct. App. 2011) (noting discretionary nature of compensation plan supported conclusion that bonus payments were not wages), trans. denied; see also Pyle v. Nat'l Wine & Spirits, 637 N.E.2d 1298, 1301 (Ind. Ct. App. 1994) (holding bonus system was discretionary and therefore bonuses were not wages).

Here, both the terms of the employment agreement and the parties' conduct establish that Morton's additional compensation was a wage because it was directly

11

connected to his work recruiting prospective clients, it was mandatory, and it was not tied to Sheaff Brock's financial success. First, the undisputed designated evidence establishes that Morton's compensation was directly related to his efforts in acquiring new customers for Sheaff Brock. When the client signed an investment agreement, the client's assets were placed under Sheaff Brock's management, and Morton's work on that account was done. Morton's employment agreement provided that additional compensation would be paid "as a direct and proximate result of [Morton's] marketing efforts, which result[ed] in the client entering into an investment advisory agreement with the Employer." Appellant's App. at 24. Second, it is undisputed that Morton's additional compensation was not discretionary but was paid regularly following the end of each quarter. And third, whether Morton would be paid additional compensation was not dictated by Sheaff Brock's financial success. Morton's employment agreement provided that "Employer shall pay" and that "[a]dditional compensation will be paid" as a direct and proximate result of Morton's marketing efforts. Id. at 23-24. Finally, as the trial court found, Morton's additional compensation was based only on his effort and was not produced as part of a team effort.

But the question remains whether the amount of Morton's additional compensation could be calculated and paid within ten days of having been "earned." In its argument, Sheaff Brock uses the words "accrued," "vested," and "earned," but the controlling term here is the statutory term, "earned." See I.C. § 22-2-5-1.[4] Employee

---

[4] Indiana Code Section 22-2-9-4(b) of the Wage Claims Act provides in relevant part that the provisions of Indiana Code Section 22-2-5-2 of the Wage Payment Act apply to claims brought under the Wage Claims Act. And Indiana Code Section 22-2-5-2 provides in relevant part that an employer must pay wages to an employee "as provided in" Indiana Code Section 22-2-5-1, which includes the

12

compensation and payment arrangements vary widely, and no Indiana case has defined the term "earn" for purposes of the Act. Indeed, in <u>Highhouse</u>, our supreme court used the term in quotation marks and considered alternative hypotheticals where the plaintiff had "earned" his purported wage both at the time he had rendered services to a patient and at the time the patient later paid his bill. 807 N.E.2d at 740. We conclude that when compensation is earned for purposes of the Act is not a fixed concept but is a fact-sensitive determination.

Nevertheless, the common denominator of a valid claim under the Wage Claims Act is that the compensation is "earned" when the amount of wages owed by the employer has been fixed and the employee has the right to payment of a sum certain, that is, a liquidated sum. We reach that conclusion by considering the statutory provisions that require payment of a wage within ten days after the wage is earned and provide for liquidated damages based on a percentage of that wage. <u>See</u> I.C. §§ 22-2-5-2, -9-4(b). In other words, the wage is earned when the amount is settled and it becomes due, after which the wage must be paid on time or the employer may be subject to a statutory penalty under the Act. <u>Id.</u>

Here, again, Morton's contract right to additional compensation accrued and was vested, albeit in an amount to be determined, when he recruited a client who signed an investment agreement with Sheaff Brock. Morton then "earned" the right to payment of specific wages, to payment of a liquidated sum that Sheaff Brock owed him, at the end of

---

requirement that an employer shall pay an employee "for all wages <u>earned</u> to a date not more than ten days prior to the date of payment." (Emphasis added).

13

each quarter when that sum could be determined. Indeed, as Sheaff Brock describes it in its brief on appeal,

> Morton's right to Additional Compensation accrued in the same fashion as Sheaff Brock's right to fees accrued. Although TD Ameritrade assessed fees at the beginning of each quarter and issued quarterly payment to Sheaff Brock for the upcoming quarter, Sheaff Brock recorded the entire payment as a liability on its books because the fees had not yet been earned. As each day concluded, Sheaff Brock (and therefore Morton) earned 1/90th of the fees for that client at that point (rounding the number of days in a quarter down to 90). However, the fees, and <u>Morton's accrued Additional Compensation, were not fully earned . . . until the conclusion of each quarter</u> because there could be reason for other adjustments.

Appellant's Brief at 24-25 (emphasis added). Thus, by Sheaff Brock's own assessment, Morton did not and could not earn the additional compensation until the end of each quarter. And it is undisputed that the amount due at that time was readily ascertainable within ten days. During each quarter, Morton was paid advances on account toward his additional compensation, but his additional compensation was not earned until his accounts were reconciled at the end of each quarter.

We agree with the trial court and hold that, in light of all of the designated evidence in this case, Morton's additional compensation was a wage for purposes of the Wage Claims Act. The additional compensation was connected to Morton's work, was mandatory, was not tied to Sheaff Brock's financial success, could be calculated to a sum certain at the end of the quarter, and could be paid regularly within ten days of that calculation. In fact, not only could Morton's additional compensation be calculated within ten days of the date earned, but the course of conduct between the parties shows that Sheaff Brock regularly calculated the additional compensation within ten days

following the end of each quarter.  The trial court did not err when it entered summary judgment in favor of Morton on his wage claim.

## CROSS-APPEAL

### Issue One:  Constructive Fraud

Morton contends on cross-appeal that the trial court erred when it entered summary judgment in favor of Sheaff Brock on Morton's constructive fraud claim.  Morton maintains that Sheaff Brock committed constructive fraud "by failing to provide honest, accurate documentation to Morton of the amount of commissions he was owed, despite repeated requests for such documentation."  Appellee's Brief at 33.  And Morton seeks punitive damages on this claim.

The elements of constructive fraud are:  (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.  Fiederlein v. Boutselis, 952 N.E.2d 847, 860 (Ind. Ct. App. 2011).

Here, again, the trial court concluded that Morton's constructive fraud claim was merely a repackaging of his breach of contract claim.  It is well settled that a breach of contract claim may not lead to an award of punitive damages.  Tobin v. Ruman, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004), trans. denied.  Rather, only if the claimant proves that the conduct of the breaching party independently establishes the elements of a common

15

law tort for which punitive damages are allowed may the claimant receive punitive damages. Id. Thus, a claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach. Id. While "[b]reaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent," the claimant must nonetheless prove the independent tort to recover punitive damages. Id. (quoting Epperly v. Johnson, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000)).

Morton's constructive fraud claim is based on allegations that Sheaff Brock did not provide "documentation from which Morton could determine whether or not he was being paid appropriately" and that Morton was "forced to rely upon false and deceptive documentation" provided by Sheaff Brock. Appellee's Brief at 35; Appellant's App. at 343. But Morton does not allege that he sustained an injury distinct from that alleged in his breach of contract claim. See Tobin, 819 N.E.2d at 86. In particular, in support of his constructive fraud claim, Morton contends only that he "clearly has been injured in an amount of hundreds of thousands of dollars as a result of the lies and omissions of Sheaff Brock." Appellee's Brief at 35. Morton did not make cogent argument or designate evidence to establish that Sheaff Brock's actions constitute the separate and independent tort of constructive fraud. The trial court did not err when it entered summary judgment in favor of Sheaff Brock on this issue.

**Issue Two: Appellate Attorney's Fees**

Finally, Morton contends that he is entitled to appellate attorney's fees. Sheaff Brock acknowledges that Morton is entitled to appellate attorney's fees if he prevails on his claim under the Wage Claims Act. Because we hold that the trial court did not err when it entered summary judgment in favor of Morton on his wage claim under the Act, Morton is entitled to appellate attorney's fees.

**Conclusion**

The trial court did not err when it concluded that Sheaff Brock breached its contract with Morton when it unilaterally applied an amended compensation structure to client accounts already under management. And the trial court did not err when it concluded that Morton's additional compensation constitutes a wage under the Wage Claims Act. Accordingly, Morton is entitled to attorney's fees, including appellate attorney's fees. Finally, the trial court did not err when it entered summary judgment in favor of Sheaff Brock on Morton's constructive fraud claim. Thus, we remand to the trial court for proceedings not inconsistent with this opinion.

Affirmed.

BAKER, J., and CRONE, J., concur.